UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-22325

RAMON E. RASCO, an individual,
ARMANDO J. GUERRA, an individual,

    Plaintiffs,

v.

W. KIRK WYCOFF, an individual,
HOWARD FEINGLASS, an individual, and
WAYNE K. GOLDSTEIN, an individual,

    Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs, Ramon E. Rasco ("Rasco") and Armando J. Guerra ("Guerra"), hereby sue Defendants, W. Kirk Wycoff ("Wycoff"), Howard Feinglass ("Feinglass"), and Wayne K. Goldstein ("Goldstein"), for preliminary and permanent injunctive relief, and state:

### INTRODUCTION

1. This is a diversity action arising from the Defendants' *ultra vires* actions and breach of fiduciary duties as members of the Board of Directors ("Board") of U.S. Century Bank ("USCB").

2. The Defendants are appointed to the USCB Board by virtue of directing three private equity funds that hold substantial portions of the USCB common and preferred stock.

3. The Defendants participated in USCB Board of Directors decisions to offer Class C and D preferred shareholders the opportunity to convert Class C and D preferred shares into voting common shares.

4. Defendants engaged in *ultra vires* conduct by devising and approving the Exchange Transaction despite the fact that the governing Articles of Incorporation expressly prohibit conversion of Class C and Class D preferred stock to common stock. The governing Articles of Incorporation are the 2015 Amended and Restated Articles of Incorporation and are attached as **Exhibit 1** (the "Amended Articles").

5. Article III.B.2.(e)(v) of the Amended Articles expressly prohibits the conversion of Class C preferred stock:

> Holders of Designated Preferred Stock shares [Class C] shall have no right to exchange or convert such shares into any other securities of the Corporation.

**Exhibit 1**, p. 29.

6. Article III.B.2.(e)(xi) of the Amended Articles restricts the rights of Class C preferred stock to those rights expressly provided in the Amended Articles or by law:

> Other Rights.  The shares of Designated Preferred Stock [Class C] shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law.

**Exhibit 1**, p. 33

7. Article III.B.2.(f)(xii) of the Amended Articles restricts the rights of Class D preferred stock to those rights expressly provided in the Amended Articles or by law:

2

>Other Rights.  The shares of Companion Preferred Stock [Class D] shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law.

**Exhibit 1**, p. 43.

8. To carry out a conversion of Class C and Class D preferred stock to common stock, the Board is required to submit a proposed amendment to the Amended Articles and submit that proposal to the common shareholders for a vote. *See* Fla. Stat. § 607.1004(1)(b).  Defendants did not do so.  Absent a properly approved amendment, the Defendants' actions are *ultra vires*.

## PARTIES

9. Plaintiff Rasco is an adult resident of Miami-Dade County and is a current holder of Class D preferred stock and voting common stock in USCB and has held this stock during all times relevant.

10. Plaintiff Guerra is an adult resident of Miami-Dade County and is a trustee or beneficiary of certain trusts that currently hold Class D Preferred stock and voting common stock in USCB and have held this stock during all times relevant.

11. Defendant Wycoff is an adult resident of the Commonwealth of Pennsylvania and has been a member of the Board of Directors for USCB at all relevant times.  Defendant Wycoff is the managing partner of Patriot Financial Partners II, LP ("Patriot"), which holds both Class C and Class D preferred stock and voting and non-voting common stock.

12. Defendant Feinglass is an adult resident of the State of New York and has been a member of the Board of Directors for USCB at all relevant times. Defendant Feinglass is the managing member of Priam Capital Associates, LLC ("Priam"), which holds both Class C and Class D preferred stock and voting and non-voting common stock.

13. Defendant Goldstein is an adult resident of the State of New York and has been a member of the Board of Directors for USCB at all relevant times. Defendant Goldstein is a founding partner of Endicott Opportunity Partners IV, LP ("Endicott"), which holds both Class C and Class D preferred stock and voting and non-voting common stock.

## JURISDICTION AND VENUE

14. This is an action for preliminary and permanent injunction regarding a proposed transaction to exchange preferred stock for voting common stock which involves an amount in controversy in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees. The proposed exchange transaction contemplates exchanging approximately $102 million in shares of preferred stock to common stock and forced redemption of approximately $15 million of preferred stock.

15. The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1), because the Plaintiffs and Defendants are citizens of different States and more than $75,000.00 is in controversy.

16. The Defendants are subject to the long-arm jurisdiction of this Court pursuant to § 48.193, Fla. Stat., because, at all relevant times, they: (1) committed

tortious acts within Miami-Dade County; (2) operated, conducted, engaged in, or carried on a business or business venture in Miami-Dade County, Florida; and (3) engaged in substantial and not isolated activity within the state of Florida.

    a. The Defendants breached a fiduciary duty owed to shareholders who reside in Miami-Dade County.

    b. The Defendants are causing injury to USCB shareholders residing in Miami-Dade County.

    c. As Board members of a Florida corporation who, at minimum, authorized a transaction involving Florida entities and residents, facilitated by a Florida investment vehicle, the Defendants foresaw the possibility of being hailed into a Florida court.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiffs' claims occurred in Miami, Florida, which is within this judicial district.

18. All conditions precedent to the relief sought herein have occurred, have been performed, have been waived, or are futile.

## BACKGROUND FACTS

*USCB Origins*

19. USCB is a Florida community bank founded in 2002. When USCB opened in 2002, it focused its business on the Hispanic community in Miami-Dade County. Today, USCB offers a wide range of deposit and loan products especially catering to the needs of local business owners, entrepreneurs, and households.

20. Plaintiffs Rasco and Guerra were among a number of local Cuban-American businessmen who founded USCB in 2002 as a minority-owned community bank.

21. Plaintiffs Rasco and Guerra were two of the seven original directors of USCB and were, directly or indirectly, original shareholders of USCB.

22. When USCB was founded in 2002, it had only one class of voting common stock and the total number of shares authorized was 10 million shares.

23. In 2006, the shareholders of USCB voted to increase the number of authorized common shares to 50 million.

### *The Great Recession and TARP Investments*

24. The Great Recession of 2007 to 2009 had a negative impact on USCB as it had on many other financial institutions.

25. Despite the negative impact of the Great Recession, the United States Department of the Treasury (the "Treasury") viewed USCB as a bank that could survive with an influx of capital.

26. In 2009, the Treasury invested $50.2 million in USCB as part of the federal Troubled Asset Relief Program ("TARP").

27. In May of 2009, to enable an agreement with the Treasury, USCB amended its Articles of Incorporation to authorize one million shares of preferred stock to be issued in one of more classes by the Board through appropriate resolutions.

28. As part of the Treasury's TARP investment in USCB, USCB amended it articles of incorporation effective August 6, 2009, issuing 50,236 shares of "Fixed Non-

6

Cumulative Perpetual Preferred Stock, Series A" and 2,515 shares of "Fixed Non-Cumulative Perpetual Preferred Stock, Series B" (collectively the "TARP Preferred"). The two amendments to the USCB articles are attached as **Exhibits 2 and 3**, respectively.

29. Section 6 of the incorporated Standard Provisions of each set of amended articles states: "Holders of Designate Preferred Stock shares shall have no right to exchange or convert such shares into any other securities." **Exhibits 2** and **3** at p. A-8.

*The Recapitalization Transaction*

30. By 2015, USCB improved its performance well enough to attract outside investors to infuse new capital into USCB.

31. To allow for the infusion of new capital into the Bank, the Treasury and the then common shareholders ("Legacy Shareholders") approved a series of actions that set the terms, conditions, and limitations for the new investments and the new investors (the "Recapitalization Transaction").

32. The Legacy Shareholders voted to approve the Recapitalization Transaction, in part, because it maintained USCB's status as an independent minority-controlled community bank.

33. USCB's status as a minority-controlled community bank was also a significant factor for the state and federal regulators who approved of the Recapitalization Transaction.

34. As of March 17, 2015, the Treasury entered into a Securities Purchase Agreement with the Private Equity Funds for the Sale of the TARP Preferred (the

"TARP Preferred Purchase Agreement"). *See* Tarp Preferred Purchase Agreement, attached hereto as **Exhibit 4**.

35. The Tarp Preferred Purchase Agreement was premised on the fact that the Private Equity Funds and a few others would invest $52.675 million in new capital in USCB and would pay the Treasury $12.325 million for the TARP Preferred.

36. Patriot and Priam were designated "Large Investors" and Endicott, Greenhill Capital Partners III, L.P. ("Greenhill"), The Claar Family Spray Trust ("Claar"), Great Hollow International, L.P. ("Great Hollow"), and TFO Financial Institutions Restructuring Fund III, LLC ("TFO")
were designated "Other Investors" or "Small Investors."

37. Priam, Patriot, and Endicott agreed to a series of restrictions on the degree of control that they would exercise over USCB in order to not be deemed "bank holding companies" under federal law, and to avoid the need to obtain approvals for acquisition of "control" under both federal and Florida law. Essentially, Priam, Patriot, and Endicott committed to being passive investors.

38. On March 12, 2015, the Legacy Shareholders voted to approve the Recapitalization Transaction by approving the Amended Articles, which superseded all previous Articles of Incorporation and Amendments, and which set the terms and conditions for the stock to be issued to the new investors.

### *New Classes of USCB Shares Created*

39. The Amended Articles created two classes of common stock: [1] voting (50 million shares), and [2] non-voting (8 million shares).

40. The Amended Articles created five classes of preferred stock: [1] Class A Designated (50,236 shares), [2] Class B Designated (2,512 shares), [3] Class C Designated (the "Tarp Substitute Preferred") (collectively the Class A, Class B, and the Class C are the "Designated Preferred") (collectively 52,748 shares), [4] Class D (the "Companion Preferred") (12,309,480 shares), and [5] the Class E Undesignated Preferred Stock (3,185,024 shares).

41. The Class A and Class B preferred stock were effectively merged into the Class C Tarp Substituted Preferred stock.

42. Patriot and Priam each invested $16,653,199.26 in USCB ($33.3 million of the $65 million total investment), and in exchange each received the following stock:

|  | Voting | Non-Voting | Class C | Class D |
|---|---|---|---|---|
| **Patriot** | 1,905,188 (9.8%) | 3,060,256 (50%) | 16,669 (31.6%) | 3,792,000 (30.9%) |
| **Priam** | 1,905,188 (9.8%) | 3,060,256 (50%) | 16,669 (31.6%) | 3,792,000 (30.9%) |

43. Endicott, Greenhill, Claar, Great Hollow, and TFO also invested proportionately in USCB, and in exchange, each received the following stock:

|  | Voting | Non-Voting | Class C | Class D |
|---|---|---|---|---|
| **Endicott** | 1,054,290 (5.4%) | 0 | 3,450 (6.7%) | 807,120 (6.6%) |
| **Greenhill** | 1,054,290 (5.4%) | 0 | 3,450 (6.7%) | 807,120 (6.6%) |
| **Claar** | 950,620 (4.9%) | 0 | 3,190 (6.0%) | 727,320 (5.9%) |
| **Great Hollow** | 950,620 (4.9%) | 0 | 3,190 (6.0%) | 727,320 (5.9%) |
| **TFO** | 950,620 (4.9%) | 0 | 3,190 (6.0%) | 727,320 (5.9%) |

44. A small group of private investors and Legacy Shareholders purchased the remaining available Class D preferred shares.

45. In addition to the holdings described above, Patriot and Priam were afforded the right to appoint one member of the USCB Board. Patriot appointed Defendant Wycoff. Priam appointed Defendant Feinglass. On February 4, 2019, USCB added Defendant Goldstein as a director.

46. As part of the Recapitalization Transaction, the Amended Articles created liquidation preferences for the Class C and Class D preferred stock to enable the new investors to protect their investments in the event of a liquidation or sale of USCB. The liquidation preference was available to the Class C and Class D preferred shareholders in the event of a "Liquidation Event" as defined by the Amended Articles.

47. The new money investors received a $114 million liquidation preference for their approximately $65 million investment in USCB and the purchase of TARP preferred stock—*i.e.*, in the event of a sale of USCB, the Preferred Stockholders would receive the first $114 million with the remaining proceeds divided on a *pro rata* basis.

48. The Amended Articles also created certain redemption rights in USCB for the Class C and Class D preferred stock. The Class C and Class D preferred stockholders, however, had no right to require redemption or repurchase of the Class C or Class D shares.

49. The Amended Articles expressly state that Class C shareholders had no right to convert Class C shares into any other securities of USCB.

10

50. The Amended Articles also expressly state that the Class C and Class D shareholders "shall not have any rights, preferences, privileges or voting powers or relative, participating, option or other special rights, or qualifications, limitations or restrictions thereof, other than as set forth herein or in the Articles of Incorporation or as provided by applicable law." *See* **Exhibit 1**, pp. 33, 43.

51. The Amended Articles did not authorize the directors to convert Class C or Class D preferred stock to common stock.

52. The Amended Articles, in Article III, Section B, authorize the directors to create new classes of stock and to create certain rights, including conversions rights, for the new classes, but do not authorize the directors to engage in transactions to convert the existing classes of preferred stock into voting or non-voting common stock.

*The Exchange Transaction*

53. The ultimate goal of Patriot, Priam, and Endicott, and the other Private Equity Funds, is to sell their stock in USCB for the maximum amount they can arrange.

54. To maximize their investment in USCB, the Private Equity Funds would fare better if they could convert their preferred stock to common stock so that they could arrange for a sale of USCB in which they would derive more revenues from the sale of all common stock than they would derive from the liquidation preference for their preferred stock and the sale of their existing holdings of common stock.

55. The Private Equity Funds collectively own 94.6% of Class C Preferred Stock, 92.7% of Class D Preferred Stock, and 45.1% of voting common stock. Patriot and Priam own 100% of the non-voting common stock.

56. Motivated purely by self-interest and with the goal to benefit the Private Equity Funds at the expense of the existing holders of common stock, the Defendants approved the Exchange Transaction.

57. On May 28, 2021, USCB President, Luis de la Aguilera transmitted all USCB preferred shareholders the "Letter of Transmittal," attached hereto as **Exhibit 5,** along with the "Offer to Exchange," attached hereto as **Exhibit 6**.

58. The Offer to Exchange provides that:

(i) each properly submitted share of the Bank's Class C Non-Voting, Non-Cumulative Perpetual Preferred Stock (the "Class C Preferred Stock") that you hold in exchange for certain number of shares of the Bank's Class A common stock (the "Class A common stock. . . , and (ii) each properly submitted share of the Bank's Class D Non-Voting, Non-Cumulative Perpetual Preferred Stock (the "Class D Preferred Stock" and, together with the "Class C Preferred Stock," the "Preferred Stock") that you hold in exchange for certain number of shares of the Bank's Class A common stock . . . .

**Exhibit 6**, p. 1.

59. The Offer to Exchange further states: "If your Preferred Stock is submitted and accepted for exchange by us, you will receive the applicable amount of Class A common stock . . . in accordance with the Exchange Rates . . . ." **Exhibit 6**, p. 20.

60. However, the Amended Articles do not permit for the conversion of Class C and Class D preferred stock into Class A common stock.

61. Defendants admit that the subsequent initial public offering ("IPO") stock purchasers "will experience immediate and substantial dilution in the book value of their investment in Class A common stock." **Exhibit 6**, p. 20.

62. Defendants also admit that an unfavorable IPO price and the exercise of outstanding stock options could result in additional dilution. **Exhibit 6**, p. 20.

63. Defendants reserved 6.1 million Class A shares for exchange with the Private Equity Firms and for the Exchange Transaction.

64. The Legacy Shareholders have almost 9.6 million Class A shares.

65. The exchange of the 6.1 million for Class A shares will result in an approximate dilution of two-thirds of the value of the Legacy Shareholders' common stock.

66. In addition, the Offer to Exchange discloses an agreement between the Board and Patriot and Priam, which gives the latter two the right not only to designate a Board member, but also "to designate one non-voting Board observer" each. **Exhibit 6**, p. 22.

67. In contravention of their fiduciary obligations, the Defendants approved an *ultra vires* exchange transaction, which places the interests of the Private Equity Funds above those of the common shareholders.

*The Amended Articles do Not Permit the Exchange Transaction*

68. In contravention of the Amended Articles, the Defendants have attempted to circumvent the need for common shareholder approval to effectuate the Exchange Transaction.

69. However, Article III, Subsection B.1 provides that the Board:

> [I]s authorized, at any time or from time to time, to issue Preferred Stock and: (i) to provide for the issuance of shares of Preferred Stock in one or more classes or series, and any restrictions on the issuance or reissuance of any additional Preferred Stock; (ii) to determine the designation for any such classes or series by number, letter or title that shall distinguish such classes or series from any other classes or series, respectively, of Preferred Stock; (iii) to establish from time to time the number of shares to be included in any such class or series, including a determination that such class or series shall consist of a single share, or that the number of shares shall be decreased (but not below the number of shares thereof then outstanding); and (iv) to determine with respect to the shares of any class or series of Preferred Stock the terms, powers, preferences, qualifications, limitations, restrictions and relative, participating, optional or other special rights of the shares of such class or series of Preferred Stock, . . .
>
> . . . .
>
> (c) whether, and, if so, upon what terms and conditions, such shares shall be convertible into, or exchangeable for, other securities or property; . . .

**Exhibit 1**, p. 11.

70. Thus, while the Board may have the authority to issue new shares of preferred stock and set the rights associated with new preferred shares without

common shareholder approval, the Amended Articles do not authorize the Board to convert or exchange existing shares of preferred stock into shares of common stock.

71.    The only reference to conversion or exchange of preferred stock appears in the Amended Articles is Art. III.B.2.(e)(v): "Conversion. Holders of Designated Preferred Stock shares shall have no right to exchange or convert such shares into any other securities of the Corporation." **Exhibit 1**, p. 29.

72.    Moreover, the provisions governing the rights of Series C and D preferred contain identical provisions limiting the rights of holders:

> Other Rights.    The shares of [Designated or Companion] Preferred Stock shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law.

**Exhibit 1**, pp. 33, 43.

73.    The Private Equity Funds are sophisticated investors and the absence of conversion or exchange rights for the preferred stock is not accidental or unintentional.

74.    If USCB and the Private Equity Funds wanted to provide for a conversion of preferred stock to common stock, they would have included that right in the Amended Articles.  They did not do so.

75.    The controlling documents do not authorize the Defendants to approve a conversion or exchange of preferred stock to common stock without amending the articles of incorporation and submitting the proposed amendment to a vote of the common shareholders.

76. The Defendants' approval of the Exchange Transaction contravenes the Amended Articles, constitutes an *ultra vires* act, and is a breach of fiduciary duty.

77. The Defendants, all directors of USCB, approved the Exchange Transaction even though the Amended Articles do not authorize directors to approve a transaction converting or exchanging existing preferred stock to common stock.

78. The Defendants' approval of the proposed Exchange Transaction constitutes a breach of their fiduciary duties to the Legacy Shareholders, because the proposed Exchange Transaction favored the Private Equity Funds preferred stockholders over the Legacy Shareholders common stockholders.

79. The Exchange Transaction, as a whole, is unfair to the Legacy Shareholders.

80. The Exchange Transaction conflicted with commitments made in the Amended Articles that protected the Legacy Shareholders from overreaching by the Private Equity Funds.

## COUNT I – BREACH OF FIDUCIARY DUTY

81. Plaintiffs hereby incorporate by reference Paragraphs 1 through 80 above, as if fully set forth herein.

82. Each of the Defendants owes a fiduciary duty to the Plaintiffs and all USCB stockholders. This duty includes without limitation, duties of good faith, care, and loyalty.

83. The Defendants' fiduciary duties require them to act in the best interests of the common stockholders, and not favor the interests of preferred stockholders over those of voting common stockholders.

84. Further, by virtue of the fiduciary duties they owe the stockholders, the Defendants are required to (a) adhere to the Amended Articles and to not approve *ultra vires* transactions; (b) act in the best interests of common stockholders; and (c) avoid acting in their own self-interests when conflicts exist.

85. The conduct, acts, and omissions described herein reveal that the Defendants committed breaches of the fiduciary duties they owed to the Plaintiffs and the stockholders by acting *ultra vires*, favoring the holders of preferred stock over the holders of voting common stock, and failing to act in the best interest of the common stockholders and stockholders as a whole, causing them direct harm and special injury.

86. Because of the Defendants' breaches of fiduciary duties and their *ultra vires* actions, Plaintiffs and the stockholders have been directly and proximately injured.

WHEREFORE, Plaintiffs, Ramon E. Rasco and Armando J. Guerra, respectfully request that this Court: (1) preliminarily and permanently enjoin Defendants from exchanging Patriot, Priam, and Endicott's Class C and D preferred stock to common stock under the terms of the *ultra vires* Exchange Transaction; (2) preliminarily and permanently enjoin Defendants from approving a future exchange transaction of Class C and D preferred stock to common stock without the approval

of the common shareholders; (3) award Plaintiffs the costs of this action, and (4) grant such other relief as the Court deems just and proper.

Dated: June 24, 2021							Respectfully submitted,

							**NELSON MULLINS BROAD AND CASSEL**

							By: /s/ *George G. Mahfood*
							George G. Mahfood | Fla. Bar No. 77356
							george.mahfood@nelsonmullins.com
							Ryan K. Todd | Fla. Bar No. 91679
							ryan.todd@nelsonmullins.com
							One Biscayne Tower, 21st Floor
							2 South Biscayne Boulevard
							Miami, Florida 33131
							Telephone: 305.373.9427

							*Attorneys for Plaintiffs*