## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-22325-MGC-JJO

RAMON E. RASCO, an individual,
ARMANDO J. GUERRA, an individual,

      Plaintiffs,

v.

W. KIRK WYCOFF, an individual,
HOWARD FEINGLASS, an individual,
WAYNE K. GOLDSTEIN, an individual, and
U.S. CENTURY BANK, a Florida corporation,

      Defendants.

_____/

## FIRST AMENDED COMPLAINT

Plaintiffs, Ramon E. Rasco ("Rasco") and Armando J. Guerra ("Guerra"), hereby sue Defendants, W. Kirk Wycoff ("Wycoff"), Howard Feinglass ("Feinglass"), Wayne K. Goldstein ("Goldstein") (collectively, Wycoff, Feinglass, and Goldstein are referred to as the "Individual Defendants"), and U.S. Century Bank ("USCB") (collectively, the Individual Defendants and USCB are referred to as the "Defendants"), for damages and preliminary and permanent injunctive relief, and state:

## INTRODUCTION

1.    This is a federal securities fraud action against the Defendants pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §77j(b) (the

"Exchange Act") and Section 10b-5 of the Securities Exchange Commission Rules, 17 C.F.R. § 240.10b-5 (the "Regulations").

2.      This action arises from an *ultra vires* scheme by the Defendants to defraud the original common shareholders of USCB (the "Legacy Shareholders") of the value and percentage of their voting common stock holdings in USCB by the devices of an exchange or forced redemption of USCB Class C and Class D preferred stock for Class A voting common stock (the "Scheme" or the "Exchange Transaction").

3.      The Defendants' Scheme involves *ultra vires* corporate acts because the USCB Amended and Restated Articles of Incorporation, adopted March 9, 2015 (the "Amended Articles"), expressly prohibit the exchange or conversion of Class C shares into any other securities of USCB (such as common stock) and expressly deny to Class C and D preferred stock any "rights, privileges, or preferences" . . . "other than as set forth herein" (such as exchanging Class D preferred for common stock). *See* Amended Articles at Article III.B.2.(e)(v); Article III.B.2.(e)(xi); Article III.B.2.(f)(xii). The Amended Articles are attached as **Exhibit 1**.

4.       The Scheme causes a substantial dilution of the percentage of voting common stock currently held by the Legacy Shareholders, including Plaintiffs, and dramatically reduces the actual value of the Legacy Shareholders voting common stock.

5.      Wycoff, Feinglass, and Goldstein acted in concert as directors of USCB to devise and approve the Scheme in order to increase the percentages of USCB voting

common stock held by the private equity funds each represents on the USCB Board and to gain voting control over USCB in conjunction with four other private equity funds currently holding USCB Class D preferred stock.

6.      The Individual Defendants are appointed to the USCB Board by virtue of directing three private equity funds that hold substantial portions of the USCB common and preferred stock.

7.      On or about May 28, 2021, the Individual Defendants approved, or caused to be approved, USCB's decision to offer Class C and D preferred shareholders the opportunity to convert Class C and D preferred shares into voting common shares (hereinafter, the "Exchange Transaction").

8.      Article III.B.2.(e)(v) of the Amended Articles expressly prohibits the conversion of Class C preferred stock:

> Holders of Designated Preferred Stock shares [Class C] shall have no right to exchange or convert such shares into any other securities of the Corporation.

**Exhibit 1**, p. 29.

9.      Article III.B.2.(e)(xi) of the Amended Articles restricts the rights of Class C preferred stock to those rights expressly provided in the Amended Articles or by law:

> Other Rights.  The shares of Designated Preferred Stock [Class C] shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law.

**Exhibit 1**, p. 33

10.     Article III.B.2.(f)(xii) of the Amended Articles restricts the rights of Class D preferred stock to those rights expressly provided in the Amended Articles or by law:

> _Other Rights_.  The shares of Companion Preferred Stock [Class D] shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law.

**Exhibit 1**, p. 43.

11.     To carry out a conversion of Class C and Class D preferred stock to common stock, the Board is required to submit a proposed amendment to the Amended Articles and submit that proposal to the common shareholders for a vote. _See_ Fla. Stat. § 607.1004(1)(b).  The Defendants did not do so.  Absent a properly approved amendment, the Defendants' actions are _ultra vires_.

12.     The Defendants made and disseminated untrue statements of material facts and omitted to state material facts, which operated as a fraud or deceit upon Plaintiffs in connection with approving the _ultra vires_ Exchange Transaction.

## PARTIES

13.     Plaintiff Rasco is an adult resident of Miami-Dade County and is a current holder of Class D preferred stock and voting common stock in USCB and has held this stock during all times relevant.

4

14.     Plaintiff Guerra is an adult resident of Miami-Dade County and is a trustee or beneficiary of certain trusts that currently hold Class D Preferred stock and voting common stock in USCB and have held this stock during all times relevant.

15.     Defendant Wycoff is an adult resident of the State of Florida and has been a member of the Board of Directors for USCB at all relevant times.  Defendant Wycoff is the managing partner of Patriot Financial Partners II, LP ("Patriot"), which holds both Class C and Class D preferred stock and voting and non-voting common stock.

16.     Defendant Feinglass is an adult resident of the State of New York and has been a member of the Board of Directors for USCB at all relevant times. Defendant Feinglass is the managing member of Priam Capital Associates, LLC ("Priam"), which holds both Class C and Class D preferred stock and voting and non-voting common stock.

17.     Defendant Goldstein is an adult resident of the State of New York and has been a member of the Board of Directors for USCB at all relevant times. Defendant Goldstein is a founding partner of Endicott Opportunity Partners, IV, LP ("Endicott"), which holds both Class C and Class D preferred stock and voting common stock.

18.     Defendant USCB is a Florida corporation with its principal place of business in Florida located at 2301 NW 87th Avenue, Doral, Miami-Dade County, Florida 33172.

5

## JURISDICTION AND VENUE

19.     The Court has original subject matter jurisdiction over this action pursuant to 28 U.S. Code § 1331, as this lawsuit asserts a statutory cause of action arising from violations of 15 U.S. Code § 78j(b) and 17 CFR § 240.10b-5.

20.     The Court has supplemental subject matter jurisdiction over Plaintiffs' other claims pursuant to 28 U.S. Code § 1367, because Plaintiffs' other claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

21.     The New York Defendants Feinglass and Goldstein are subject to the long-arm jurisdiction of this Court pursuant to Fla. Stat. § 48.193, because at all relevant times they: (1) committed tortious acts within Miami-Dade County; (2) operated, conducted, engaged in, or carried on a business or business venture in Miami-Dade County, Florida; and (3) engaged in substantial and not isolated activity within the state of Florida, as more fully described below.

      a. The New York Defendants breached a fiduciary duty owed to shareholders who reside in Miami-Dade County.

      b. The New York Defendants caused false and misleading securities exchange offering materials to be issued in Miami-Dade County

      c. The Defendants are causing injury to USCB shareholders residing in Miami-Dade County.

     d.  As Board members of a Florida corporation who, at minimum, authorized a transaction involving Florida entities and residents, facilitated by a Florida investment vehicle, the Defendants foresaw the possibility of being hailed into a Florida court.

22.    Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2), as a substantial part of the events giving rise to Plaintiffs' claims occurred in Miami, Florida, which is within this judicial district.

23.    All conditions precedent to the relief sought herein have occurred, have been performed, have been waived, or are futile.

## BACKGROUND

### *USCB Origins*

24.    USCB is a Florida community bank founded in 2002. When USCB opened in 2002, it focused its business on the Hispanic community in Miami-Dade County.  Today, USCB offers a wide range of deposit and loan products especially catering to the needs of local business owners, entrepreneurs, and households.

25.    Plaintiffs Rasco and Guerra were among a number of local Cuban American businessmen who founded USCB in 2002 as a minority-owned community bank.

26.    Plaintiffs Rasco and Guerra were two of the seven original directors of USCB and were, directly or indirectly, original shareholders of USCB.

27.     When USCB was founded in 2002, it had only one class of voting common stock and the total number of shares authorized was 10 million shares.

28.     In 2006, the shareholders of USCB voted to increase the number of authorized common shares to 50 million.

### *The Great Recession and TARP Investments*

29.     The Great Recession of 2007 to 2009 had a negative impact on USCB as it had on many other financial institutions.

30.     Despite the negative impact of the Great Recession, the United States Department of the Treasury (the "Treasury") viewed USCB as a bank that could survive with an influx of capital.

31.     In 2009, the Treasury invested $50.2 million in USCB as part of the federal Troubled Asset Relief Program ("TARP").

32.     In May of 2009, to enable an agreement with the Treasury, USCB amended its Articles of Incorporation to authorize one million shares of preferred stock to be issued in one of more classes by the Board through appropriate resolutions.

33.     As part of the Treasury's TARP investment in USCB, USCB amended its articles of incorporation effective August 6, 2009, issuing 50,236 shares of "Fixed Non-Cumulative Perpetual Preferred Stock, Series A" and 2,515 shares of "Fixed Non-Cumulative Perpetual Preferred Stock, Series B" (collectively the "TARP Preferred").  The two amendments to the USCB articles are attached as **Exhibits 2 and 3**, respectively.

34.   Section 6 of the incorporated Standard Provisions of each set of amended articles states: "Holders of Designate Preferred Stock shares shall have no right to exchange or convert such shares into any other securities." **Exhibits 2** and **3** at p. A-8.

### *The Recapitalization Transaction*

35.   By 2015, USCB improved its performance well enough to attract outside investors to infuse new capital into USCB.

36.   To allow for the infusion of new capital into the Bank, the Treasury and the then common shareholders ("Legacy Shareholders") approved a series of actions that set the terms, conditions, and limitations for the new investments and the new investors (the "Recapitalization Transaction").

37.   The Legacy Shareholders voted to approve the Recapitalization Transaction, in part, because it maintained USCB's status as an independent minority-controlled community bank.

38.   USCB's status as a minority-controlled community bank was also a significant factor for the state and federal regulators who approved of the Recapitalization Transaction.

39.   As of March 17, 2015, the Treasury entered into a Securities Purchase Agreement with, inter alia, seven private equity funds for the Sale of the TARP Preferred (the "TARP Preferred Purchase Agreement").  The seven private equity funds are Patriot, Priam, Endicott, Greenhill Capital Partners, III, L.P., The Claar Family Spray Trust, Great Hollow International, L.P., and TFO Financial Institutions

Restructuring Fund III, LLC (the "Private Equity Funds"). *See* Tarp Preferred Purchase Agreement, attached hereto as **Exhibit 4**.

40.   The Tarp Preferred Purchase Agreement was premised on the fact that the Private Equity Funds and a few others would invest $52.675 million in new capital in USCB and would pay the Treasury $12.325 million for the TARP Preferred.

41.   Patriot and Priam were designated "Large Investors" and Endicott, Greenhill Capital Partners III, L.P. ("Greenhill"), The Claar Family Spray Trust ("Claar"), Great Hollow International, L.P. ("Great Hollow"), and TFO Financial Institutions Restructuring Fund III, LLC ("TFO") were designated "Other Investors" or "Small Investors."

42.   Priam, Patriot, and Endicott agreed to a series of restrictions on the degree of control that they would exercise over USCB in order to not be deemed "bank holding companies" under federal law, and to avoid the need to obtain approvals for acquisition of "control" under both federal and Florida law.  Essentially, Priam, Patriot, and Endicott committed to being passive investors.

43.   On March 12, 2015, the Legacy Shareholders voted to approve the Recapitalization Transaction by approving the Amended Articles, which superseded all previous Articles of Incorporation and Amendments, and which set the terms and conditions for the stock to be issued to the new investors.

*New Classes of USCB Shares Created*

44.    The Amended Articles created two classes of common stock: [1] voting (50 million shares), and [2] non-voting (8 million shares).

45.    The Amended Articles created five classes of preferred stock: [1] Class A Designated (50,236 shares), [2] Class B Designated (2,512 shares), [3] Class C Designated (the "Tarp Substitute Preferred") (collectively the Class A, Class B, and the Class C are the "Designated Preferred") (collectively 52,748 shares), [4] Class D (the "Companion Preferred") (12,309,480 shares), and [5] the Class E Undesignated Preferred Stock (3,185,024 shares).

46.    The Class A and Class B preferred stock were effectively merged into the Class C Tarp Substituted Preferred stock.

47.    Patriot and Priam each invested $16,653,199.26 in USCB ($33.3 million of the $65 million total investment), and in exchange each received the following stock:

|  | Voting | Non-Voting | Class C | Class D |
|---|---|---|---|---|
| **Patriot** | 1,905,188 (9.8%) | 3,060,256 (50%) | 16,669 (31.6%) | 3,792,000 (30.9%) |
| **Priam** | 1,905,188 (9.8%) | 3,060,256 (50%) | 16,669 (31.6%) | 3,792,000 (30.9%) |

48.    Endicott, Greenhill, Claar, Great Hollow, and TFO also invested proportionately in USCB, and in exchange, each received the following stock:

|  | Voting | Non-Voting | Class C | Class D |
|---|---|---|---|---|
| **Endicott** | 1,054,290  (5.4%) | 0 | 3,450 (6.7%) | 807,120 (6.6%) |
| **Greenhill** | 1,054,290  (5.4%) | 0 | 3,450 (6.7%) | 807,120 (6.6%) |

| | | | | |
|---|---|---|---|---|
| **Claar** | 950,620  (4.9%) | 0 | 3,190 (6.0%) | 727,320 (5.9%) |
| **Great Hollow** | 950,620  (4.9%) | 0 | 3,190 (6.0%) | 727,320 (5.9%) |
| **TFO** | 950,620  (4.9%) | 0 | 3,190 (6.0%) | 727,320 (5.9%) |

49.     A small group of private investors and Legacy Shareholders purchased the remaining available Class D preferred shares.

50.     In addition to the holdings described above, Patriot and Priam were afforded the right to appoint one member of the USCB Board.  Patriot appointed Defendant Wycoff.  Priam appointed Defendant Feinglass.  On February 4, 2019, USCB added Defendant Goldstein as a director.

51.     As part of the Recapitalization Transaction, the Amended Articles created liquidation preferences for the Class C and Class D preferred stock to enable the new investors to protect their investments in the event of a liquidation or sale of USCB.  The liquidation preference was available to the Class C and Class D preferred shareholders in the event of a "Liquidation Event" as defined by the Amended Articles.

52.     The new money investors received a $114 million liquidation preference for their approximately $65 million investment in USCB and the purchase of TARP preferred stock—*i.e.*, in the event of a sale of USCB, the Preferred Stockholders would receive the first $114 million with the remaining proceeds divided on a *pro rata* basis.

53.     The Amended Articles also created certain redemption rights in USCB for the Class C and Class D preferred stock.  The Class C and Class D preferred

stockholders, however, had no right to require redemption or repurchase of the Class C or Class D shares.

54.     The Amended Articles expressly state that Class C shareholders had no right to convert Class C shares into any other securities of USCB.

55.     The Amended Articles also expressly state that the Class C and Class D shareholders "shall not have any rights, preferences, privileges or voting powers or relative, participating, option or other special rights, or qualifications, limitations or restrictions thereof, other than as set forth herein or in the Articles of Incorporation or as provided by applicable law." *See* **Exhibit 1**, pp. 33, 43.

56.     The Amended Articles do not authorize the directors to exchange or convert Class C or Class D preferred stock to common stock.

57.     The Amended Articles, in Article III, Section B, authorize the directors to create new classes of stock and to create certain rights, including conversions rights, for the new classes, but do not authorize the directors to engage in transactions to exchange or convert the existing classes of preferred stock into voting or non-voting common stock.

### *The Exchange Transaction*

58.     The ultimate goal of Patriot, Priam, and Endicott, and the other Private Equity Funds, is to maximize the value of their investment in USCB.

59.     To maximize the value of their investment in USCB, the Private Equity Funds would fare better if they could exchange or convert their preferred stock to

common stock at the liquidation preference value, and increase the percentage of their holdings in voting common stock. They could then arrange for a sale of USCB in which they would derive more revenues from the sale of all common stock than they would derive from the liquidation preference for their preferred stock and the sale of their existing holdings of common stock.

60.     The Private Equity Funds collectively own 94.6% of Class C Preferred Stock, 92.7% of Class D Preferred Stock, and 45.1% of voting common stock.  Patriot and Priam own 100% of the non-voting common stock.

61.     Motivated purely by self-interest and with the goal to benefit the Private Equity Funds at the expense of the existing holders of common stock, the Defendants approved the Exchange Transaction.

62.     On May 28, 2021, USCB President, Luis de la Aguilera transmitted all USCB preferred shareholders the "Letter of Transmittal," attached hereto as **Exhibit 5,** along with the "Offer to Exchange," attached hereto as **Exhibit 6**.

63.     The Offer to Exchange provides that:

(i) each properly submitted share of the Bank's Class C Non-Voting, Non-Cumulative Perpetual Preferred Stock (the "Class C Preferred Stock") that you hold in exchange for certain number of shares of the Bank's Class A common stock (the "Class A common stock. . . , and (ii) each properly submitted share of the Bank's Class D Non-Voting, Non-Cumulative Perpetual Preferred Stock (the "Class D Preferred Stock" and, together with the "Class C Preferred Stock," the "Preferred Stock") that you hold in exchange for certain number of shares of the Bank's Class A common stock . . . .

**Exhibit 6**, p. 1.

14

64.    The Offer to Exchange further states: "If your Preferred Stock is submitted and accepted for exchange by us, you will receive the applicable amount of Class A common stock . . . in accordance with the Exchange Rates . . . ." **Exhibit 6**, p. 20.  Any untendered preferred stock will be forcibly redeemed by USCB "for cash at a later date."

65.    The Offer to Exchange states that the "Exchange Rates" . . . "will be determined by dividing (i) the amount of the liquidation preference of the applicable Preferred Stock that is submitted by (ii) the IPO Price of Class A common stock . . . ."

66.    However, the Amended Articles do not permit for the exchange or conversion of Class C and Class D preferred stock into Class A common stock.

67.    Defendants admit that the subsequent initial public offering ("IPO") stock purchasers "will experience immediate and substantial dilution in the book value of their investment in Class A common stock." **Exhibit 6**, p. 20.

68.    The reason for the "immediate and substantial dilution in the book value" of the IPO issued common stock is that the Exchange Offer will use the liquidation preference for determining the number of common shares to be issued.  The liquidation preference, however, greatly exceeds the value of the preferred stock, so the actual value of the common stock issued in the Exchange Offer is significantly lower than the proposed IPO price.

69.    The Defendants have not disclosed in the Exchange offer materials that the Exchange Offer will also have the same "immediate and substantial dilution of

book value" on the voting common stock owned by the Legacy Shareholders. This dilutive effect is occurring because USCB and the Board are valuing the preferred stock at the artificially inflated value of the liquidation preference, even though a liquidation event is not occurring, rather than by using a market valuation approach to the value of the preferred shares. The Private Equity Funds own 94.6% of the Class C preferred stock and 92.7% of the Class D preferred stock. As such, a grossly disproportionate number of new voting common stock is being issued to the Private Equity Funds because of the artificially inflated value of the preferred stock at the liquidation preference value.  Plaintiffs' and the Legacy Shareholders' voting power and common stock value is being improperly diluted through the *ultra vires* Scheme being implemented as part of the Exchange Offer.

70.     Defendants also admit that an unfavorable IPO price and the exercise of outstanding stock options could result in additional dilution.  **Exhibit 6**, p. 20.

71.     Defendants reserved 6.1 million Class A voting common shares for exchange with the Private Equity Firms and for the Exchange Transaction.

72.     The Legacy Shareholders have almost 9.6 million Class A voting common shares.

73.     The exchange of the 6.1 million for Class A voting common shares will result in an approximate dilution of two-thirds of the value of the Legacy Shareholders' common stock.

74.     In addition, the Offer to Exchange discloses an agreement between the Board and Patriot and Priam, which gives the latter two the right not only to designate a Board member, but also "to designate one non-voting Board observer" each. **Exhibit 6**, p. 22.

75.     In contravention of their fiduciary obligations, the Defendants approved an *ultra vires* exchange transaction, which places the interests of the Private Equity Funds above those of the common shareholders.

### *The Amended Articles do Not Permit the Exchange Transaction*

76.     In contravention of the Amended Articles, the Defendants have attempted to circumvent the need for common shareholder approval to effectuate the Exchange Transaction.

77.     However, Article III, Subsection B.1 provides that the Board:

> [I]s authorized, at any time or from time to time, to issue Preferred Stock and: (i) to provide for the issuance of shares of Preferred Stock in one or more classes or series, and any restrictions on the issuance or reissuance of any additional Preferred Stock; (ii) to determine the designation for any such classes or series by number, letter or title that shall distinguish such classes or series from any other classes or series, respectively, of Preferred Stock; (iii) to establish from time to time the number of shares to be included in any such class or series, including a determination that such class or series shall consist of a single share, or that the number of shares shall be decreased (but not below the number of shares thereof then outstanding); and (iv) to determine with respect to the shares of any class or series of Preferred Stock the terms, powers, preferences, qualifications, limitations, restrictions and relative, participating, optional or other special rights of the shares of such class or series of Preferred Stock, . . .

17

. . . .

> (c) whether, and, if so, upon what terms and conditions, such shares shall be convertible into, or exchangeable for, other securities or property; . . .

**Exhibit 1**, p. 11.

78.     Thus, while the USCB Board may have the authority to issue new shares of preferred stock and set the rights associated with new preferred shares without common shareholder approval, the Amended Articles do not authorize the Board to convert or exchange existing shares of preferred stock into shares of common stock.

79.     The only reference to conversion or exchange of preferred stock appears in the Amended Articles is Art. III.B.2.(e)(v):

> <u>Conversion</u>. Holders of Designated Preferred Stock shares shall have no right to exchange or convert such shares into any other securities of the Corporation.

**Exhibit 1**, p. 29.

80.     Moreover, the provisions governing the rights of Series C and D preferred stock contain identical provisions limiting the rights of holders:

> <u>Other Rights</u>.   The shares of [Designated or Companion] Preferred Stock shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law.

**Exhibit 1**, pp. 33, 43.

81.     The Private Equity Funds are sophisticated investors and the absence of conversion or exchange rights for the preferred stock in the Amended Articles is not accidental or unintentional.

82.     If USCB and the Private Equity Funds wanted to provide for a conversion of preferred stock to common stock, they would have included that right in the Amended Articles.  They did not do so.

83.     The controlling documents do not authorize the Defendants to approve a conversion or exchange of preferred stock to common stock without amending the articles of incorporation and submitting the proposed amendment to a vote of the common shareholders.

84.     The Defendants' approval of the Exchange Transaction contravenes the Amended Articles, constitutes an *ultra vires* act, and is a breach of fiduciary duty owed to Plaintiffs and the other Legacy Shareholders.

85.     The Individual Defendants, all directors of USCB, approved or caused to be approved, the Exchange Transaction even though the Amended Articles do not authorize directors to approve a transaction converting or exchanging existing preferred stock to common stock.

86.     The Defendants' approval of the Exchange Transaction constitutes a breach of their fiduciary duties to the Legacy Shareholders, because the Exchange Transaction favors the Private Equity Funds preferred stockholders over the Legacy

Shareholders common stockholders and dilutes the value of the Legacy Shareholders common stock holdings through *ultra vires* act.

87.     The Exchange Transaction, as a whole, is unfair to the Legacy Shareholders.

88.     The Exchange Transaction conflicts with commitments made in the Amended Articles that protect the Legacy Shareholders from overreaching by the Private Equity Funds.

89.     The Class C and D preferred stock and the Class A common stock are all "securities" pursuant to Section 10(b) of the Exchange Act.

90.     The Exchange Offer is a "purchase or sale" pursuant to Section 10(b) of the Exchange Act, as the Exchange Offer results in an acquisition of a security in exchange for something of value—namely, the acquisition of Class A common stock in exchange for Class C and D preferred stock.

### *The Defendants' Scheme*

91.     The Exchange Offer is a scheme orchestrated by the Individual Defendants to convert the Class C and D preferred stock into Class A common stock with the intent to misappropriate USCB equity in order to unfairly over-compensate the preferred shareholders at the expense of diluting the common shareholders (the "Scheme").

92.     The Scheme improperly inflates the value of the Class C and D preferred while simultaneously devaluing the Class A common stock.

20

93.    The Defendants attempted to hide the Scheme from the common shareholders and Plaintiffs herein by transmitting the Offer to Exchange on May 28, 2021, which contained material misinformation and omissions.

94.    The Scheme continued on June 15, 2021, when the Defendants transmitted the Supplement No. 1 (the "Supplement") to the Exchange Offer.

95.    The Supplement purportedly "provides additional important information regarding the exchange offer . . . to voluntarily exchange your preferred stock for the Bank's Class A common stock."  Supplement, p. 1.

96.    The Exchange Offer is a scheme to defraud Plaintiffs and the Legacy Shareholders because it is based on an *ultra vires* act that Defendants do not disclose in the Exchange Offer materials.

97.    Defendants made the following statements in the Exchange Offer that are untrue or omit material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading ("Actionable Statements"):

> a.    At pages 11-12, as to the binding nature of the transaction, "Our acceptance for exchange of Preferred Stock submitted pursuant to the Exchange Offers will constitute a binding agreement between the exchanging person and us upon the terms, and subject to the conditions, of the Exchange Offers, which agreement will be governed by, and construed in accordance with, the laws of the State of Florida."

> b.    At page 24, as to rights of Class C preferred stock, "Other than as described in the preceding sentence, holders of Class C Preferred Stock have no other voting rights."

    c.    At page 25, as to rights of Class D preferred stock, "Other than as described in the preceding sentence, holders of Class D Preferred Stock have no other voting rights."

    d.    At page 15, as to dilution of common stock value, "Participants in the Exchange Offers will experience immediate and substantial dilution of the book value of their investment in Class A commons stock.

98.    The statement at pages 11-12 of the Exchange Offer regarding the binding nature of the exchange of preferred stock is false. The transaction is *ultra vires* and is not binding. Defendants failure to disclose that the Amended Articles do not authorize USCB or the Directors to conduct the Exchange is a material omission and makes the statement false and misleading.

99.    The statement at page 24 of the Exchange Offer regarding voting rights of Class C preferred stock, as well as the complete description of the rights of Class C preferred shares at pages 23-24 of the Exchange Offer, are materially misleading because Defendants fail to disclose that the same provision of the Amended Articles that provides that Class C preferred stock has no other voting rights also states that Class C preferred stock "shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law."

100.    The statement at page 23-24 of the Exchange offer regarding rights of Class C preferred stock is materially misleading because Defendants fail to disclose that the Amended Articles state that "Holders of Designated Preferred Stock shares

[Class C] shall have no right to exchange or convert such shares into any other securities of the Corporation."

101.    The statement at pages 24-25 of the Exchange offer regarding voting rights and other rights of Class D preferred stock is materially misleading because Defendants fail to disclose that the same provision of the Amended Articles that provides that Class D preferred stock has no other voting rights also states that Class D preferred stock "shall not have any rights, preferences, privileges, or voting powers or relative participating, optional or other special rights, or qualifications or restrictions thereof, other than as set forth herein or as provided by applicable law."

102.    The Defendants caused the above untrue statements and omissions to be made and knew the statements were calculated to reach Plaintiffs and the Legacy Shareholders.

103.    The Individual Defendants played an integral role in preparing and disseminating the misleading information, including the Offer to Exchange and the Supplement, which contain the untrue statements and the omissions at issue.

104.    The Defendants had knowledge of the untrue statements and omissions and provided substantial assistance in advancing the Scheme.

105.    The Individual Defendants acted with the intent to deceive so that the Private Equity Funds would benefit from the overvaluation of the Class C and D preferred stock at the expense of the Legacy Shareholders.

*Irreparable Harm*

106.    Once the Exchange Offer and forced redemption have been consummated, it will be virtually impossible for the Court to undue the transactions.

107.    The *ultra vires* dilution of the Plaintiffs' common stock resulting from the Exchange Offer will significantly alter the balance of power and control over USCB.

108.    The *ultra vires* dilution of the Plaintiffs' common stock resulting from the Exchange Offer will decrease the value of Plaintiffs' common stock in a manner that is not easily quantifiable.

109.    If permitted to proceed with the Exchange Offer and IPO, USCB will list millions of USCB Class A common stock on the NASDAQ stock exchange.  It will be difficult, if not impossible, to claw back all of the common stock of USCB issued in the IPO through the *ultra vires* Exchange Offer Scheme that will be bought-and-sold on the NASDAQ stock exchange.

### COUNT I
### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND REGULATION 10b-5

110.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 109 above, as if fully set forth herein.

111.    One of Congress' purposes in adopting the Exchange Act was to ensure that the shareholders, confronted with a tender or exchange offer, would be provided with complete and truthful information about the offer, the terms and probable consequences of the offer, and the interests and qualifications of any person recommending acceptance or rejection of an offer.

112.    As detailed herein, the Defendants made false and misleading statements, engaged in a scheme to deceive the USCB shareholders, engaged in a course of conduct that artificially inflates the price of the Class C and Class D preferred stock, and operates as fraud and deceit on common stockholders by misrepresenting that the Board could authorize the Exchange Transaction and that USCB can exchange Class C and D preferred stock for Class A common stock.

113.    The Defendants disseminated and approved the untrue statements and material omissions specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made—in light of the circumstances under which they were made—not misleading.

114.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

    a.  employed devices, schemes and artifices to defraud;

    b.  made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.  engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with approving the *ultra vires* Exchange Transaction.

115.   As a result of Defendants' actions detailed above, Plaintiffs have suffered economic losses through the dilution of the value of their common stock.

116.   As a result of the Defendants' actions detailed above, when Plaintiffs refuse to tender their Class D preferred stock, USCB will redeem that stock and Plaintiffs will lose the dividends currently declared and being paid on the Class D preferred stock.

WHEREFORE, Plaintiffs, Ramon E. Rasco and Armando J. Guerra, respectfully request that this Court: (1) preliminarily and permanently enjoin Defendants from exchanging Class C and D preferred stock to common stock under the terms of the *ultra vires* Exchange Transaction; (2) preliminarily and permanently enjoin Defendants from approving a future exchange transaction of Class C and D preferred stock to common stock; (3) award Plaintiffs damages resulting from the Exchange Offer; (4) award Plaintiffs the costs of this action; and (5) grant such other relief as the Court deems just and proper.

## COUNT II
### BREACH OF FIDUCIARY DUTY

117.   Plaintiffs hereby incorporate by reference Paragraphs 1 through 109 above, as if fully set forth herein.

118.   Each of the Defendants owes a fiduciary duty to the Plaintiffs and all USCB common stockholders. This duty includes without limitation, duties of good faith, care, and loyalty.

119.    The Defendants' fiduciary duties require them to act in the best interests of the common stockholders, and not favor the interests of preferred stockholders over those of voting common stockholders.

120.    Further, by virtue of the fiduciary duties they owe the common stockholders, the Defendants are required to (a) adhere to the Amended Articles and to not approve *ultra vires* transactions; (b) act in the best interests of common stockholders; and (c) avoid acting in their own self-interests when conflicts exist.

121.    The conduct, acts, and omissions described herein demonstrate that the Defendants committed breaches of the fiduciary duties they owed to the Plaintiffs and the common stockholders by acting *ultra vires*, favoring the holders of preferred stock over the holders of voting common stock, and failing to act in the best interest of the common stockholders and stockholders as a whole, causing them direct harm and special injury.

122.    As a result of Defendants' actions detailed above, Plaintiffs have suffered economic losses through the dilution of the value of their common stock.

123.    As a result of the Defendants' actions detailed above, when Plaintiffs refuse to tender their Class D preferred stock, USCB will redeem that stock and Plaintiffs will lose the dividends currently declared and being paid on the Class D preferred stock.

27

124.    Because of the Defendants' breaches of fiduciary duties and their *ultra vires* actions, Plaintiffs and the stockholders have been directly and proximately injured.

WHEREFORE, Plaintiffs, Ramon E. Rasco and Armando J. Guerra, respectfully request that this Court: (1) preliminarily and permanently enjoin Defendants from exchanging Class C and D preferred stock to common stock under the terms of the *ultra vires* Exchange Transaction; (2) preliminarily and permanently enjoin Defendants from approving a future exchange transaction of Class C and D preferred stock to common stock; (3) award Plaintiffs damages resulting from the Exchange Offer; (4) award Plaintiffs the costs of this action; and (5) grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Date: July 12, 2021                    Respectfully submitted,

**NELSON MULLINS BROAD AND CASSEL**

By: */s/ George G. Mahfood*
George G. Mahfood | Fla. Bar No. 77356
Ryan K. Todd | Fla. Bar No. 91679
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.373.9427
george.mahfood@nelsonmullins.com
ryan.todd@nelsonmullins.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2021, I electronically filed the foregoing document with the United States District Court for the Southern District of Florida through the CM/ECF system, which will send notification to all counsel of record registered with the CM/ECF System.

U.S. Century Bank is a new party. It will be served using original process upon the issuance of a Summons.

/s/ *George G. Mahfood*
George G. Mahfood