UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 21-cv-22325-COOKE/O'SULLIVAN

RAMON E. RASCO, an individual, and
ARMANDO J. GUERRA, an individual,

      Plaintiffs,

v.

W. KIRK WYCOFF, an individual,
HOWARD FEINGLASS, an individual,
WAYNE K. GOLDSTEIN, an individual, and
U.S. CENTURY BANK, a Florida corporation,

      Defendants.
_____/

# DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE AND MEMORANDUM OF LAW IN SUPPORT

| | |
|---|---|
| *Counsel for Defendant U.S. Century Bank* | *Counsel for Defendants W. Kirk Wycoff, Howard Feinglass and Wayne K. Goldstein* |
| Scott J. Link | Jason R. Domark |
| Kara Rockenbach Link | Charles C. Kline |
| Link & Rockenbach, PA | Reid Kline |
| 1555 Palm Beach Lakes Blvd., Suite 930 | Ashley Gomez-Rodon |
| West Palm Beach, FL 33401 | Cozen O'Connor |
| (561) 847-5508; (561) 855-29891 [fax] | Southeast Financial Center, Suite 3000 |
| | 200 S. Biscayne Blvd. |
| | Miami, FL 33131-2352 |
| | (305) 704-5940; (305) 704-5955 [fax] |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

SUMMARY OF ARGUMENT ......................................................................................... 1

INTRODUCTION ............................................................................................................ 2

MEMORANDUM OF LAW ............................................................................................ 4

    I.      Rules 12(b)(6) and 9(b) – Dismissal is Required Based on Plaintiffs' ................... 4
          Failure to State a Claim Upon Which Relief May be Granted and
          Failure to Plead with Particularity

    II.    Heightened Pleading Standards Under the PSLRA ............................................. 5

    III.   Grounds for Dismissal – Count I – Elements for 10(b) Cause of ......................... 5
          Action Not Met and Plaintiffs Lack Standing

         A.    No Purchase or Sale ................................................................................ 6

         B.    No Factual Misrepresentations ............................................................... 8

         C.    No Scienter ............................................................................................11

         D.    No Reliance ...........................................................................................14

         E.    No Economic Loss and No Loss Causation ..........................................15

    IV.   Grounds for Dismissal – Count II – Plaintiffs Lack Standing to Sue .................16
          Directly and Elements for Breach of Fiduciary Duty Not Met

         A.    Plaintiffs Lack Standing to State a Breach of Fiduciary Duty Claim .........16

         B.    There Are No Well-Pleaded Factual Allegations to Support a .................18
             Claim that Defendants Breached Any Fiduciary Duties

    V.    Pendent Jurisdiction ..........................................................................................19

CONCLUSION ...............................................................................................................19

CERTIFICATE OF SERVICE .......................................................................................20

## TABLE OF AUTHORITIES

**Rules**

Fed. R. Civ. P. 7 ............................................................................................. 1

Fed. R. Civ. P. 9 ...................................................................................... 1, 3, 4

Fed. R. Civ. P. 12 ................................................................................... 1, 4, 5

S.D. Fla. LR 7.1 ............................................................................................. 1

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................... 5

28 U.S.C. § 1367 .........................................................................................19

§ 607.0750, Fla. Stat. .............................................................................. 17, 18

§ 607.0830, Fla. Stat. ...................................................................................18

§ 607.0841, Fla. Stat. ...................................................................................18

**Case Law**

*Alario v. Miller* ...........................................................................................16
    354 So. 2d 925 (Fla. 2d DCA 1978)

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds* ............................................5, 14
    568 U.S. 455 (2013)

*Angelino v. Santa Barbara Enters., LLC* ...........................................................17
    2 So. 3d 1100 (Fla. 3d DCA 2009)

*Arbitrage Fund v. Petty* ...............................................................................17
    307 So. 3d 119 (Fla. 3d DCA 2020)

*Arnold v. Soc'y for Sav. Bancorp* ...................................................................18
    678 A.2d 533 (Del. 1996)

*Ashcroft v. Iqbal* ......................................................................................... 4
    556 U.S. 662 (2009)

*Basson v. Mortgage Electronic Registration Sys., Inc.* ......................................... 7
    741 Fed. App'x 770 (11th Cir. 2018)

*Bell Atlantic Corp. v. Twombly* ........................................................... 4
   550 U.S. 544 (2007)

*Berkowitz v. Delaire Country Club, Inc.* .................................................. 9
   126 So. 3d 1215 (Fla. 4th DCA 2012).

*Birnbaum v. Newport Steel Corp.* .......................................................6, 8
   193 F.2d 461 (2d Cir. 1952)

*Blue Chip Stamps v. Manor Drug Stores* ................................................. 6
   421 U.S. 723 (1975)

*Braun v. Buyers Choice Mortgage Corp.* ................................................16
   851 So. 2d 199 (Fla. 4th DCA 2003)

*Carvelli v. Ocwen Fin. Corp.* ...........................................................10
   934 F.3d 1307 (11th Cir. 2019)

*Demeza v. Hartford Ins. Co. of the Midwest* ............................................. 4
   No. 8:11-cv-2522, 2012 WL 163818 (M.D. Fla. Jan. 19, 2012)

*Dinuro Invs., LLC v. Camacho* ...................................................... 17, 18
   141 So. 3d 736 (Fla. 3d DCA 2014)

*Dura Pharmaceuticals, Inc. v. Broudo* .................................................16
   544 U.S. 336 (2005)

*Falic v. Legg Mason Wood Walker, Inc.* ................................................16
   347 F. Supp. 2d 1260 (S.D. Fla. 2004)

*Gavilan v. Balans, L.C.* ................................................................ 4
   No. 14-22791-CIV, 2014 WL 6979625 (S.D. Fla. Dec. 9, 2014)

*Geoffrey A. Orley Revocable Tr. U/A/D 1/26/2000 v. Genovese* ............................. 8
   No. 18-CIV-8460(ER), 2020 WL 611506 (S.D.N.Y. Feb. 7, 2020)

*Golden v. Univ. of Miami* ............................................................... 9
   484 F. Supp. 3d 1255 (S.D. Fla. 2020)

*In re Galectin Therapeutics, Inc. Sec. Litig.* ........................................... 8
   843 F.3d 1257 (11th Cir. 2016)

*In re Sahlen & Assocs., Inc. Sec. Litig.* ...............................................14
   773 F. Supp. 342 (S.D. Fla. 1991)

*In re Sunrise Sec. Litig.* ...................................................................................................... 18
    916 F.2d 874 (3d Cir. 1990)

*Jacobs v. Tempur-Pedic Int'l, Inc.* .......................................................................................... 4
    626 F.3d 1327 (11th Cir. 2010)

*Hynd v. Ireland* ...................................................................................................................... 6
    582 So. 2d 772 (Fla. 4th DCA 1991)

*Kammona v. Onteco Corp.* ..................................................................................................... 6
    587 Fed. App'x 575 (11th Cir. 2014)

*Lattimore v. Wells Fargo Bank, N.A.* ...................................................................................... 4
    590 Fed. App'x 912 (11th Cir. 2014)

*Licht v. Watson* ................................................................................................................... 6, 8
    567 Fed. App'x 689 (11th Cir. 2014)

*Luczak v. Nat'l Beverage Corp.* .............................................................................................. 5
    812 Fed. App'x 915 (11th Cir. 2020)

*McKinzie v. Davidson* ....................................................................................................... 6, 12
    No. 05-61761-CIV, 2006 WL 8432332 (S.D. Fla. July 10, 2006)

*Mergens v. Dreyfoos* ............................................................................................................. 19
    166 F.3d 1114 (11th Cir. 1999)

*Meyer v. Greene* .................................................................................................................... 16
    710 F.3d 1189 (11th Cir. 2013)

*Meyers v. Moody* ..................................................................................................................... 6
    693 F.2d 1196 (5th Cir. 1982)

*Miranda v. Ponce Federal Bank* .............................................................................................. 4
    948 F.2d 41, 45 (1st Cir. 1991)

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund* .................................. 9
    575 U.S. 175 (2015)

*Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.* ................................ 19
    No. 12-61018-CIV, 2013 WL 12080186 (S.D. Fla. Sept. 12, 2013)
    *subsequently aff'd*, 572 Fed. App'x 713 (11th Cir. 2014)

*Phillips v. Scientific–Atlanta, Inc.* ........................................................................................ 11
    374 F.3d 1015 (11th Cir. 2004)

*Ross v. Bank South, N.A.* ...................................................................................14
   885 F.2d 723 (11th Cir. 1989)
   *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990)

*Schuster v. Gardner* ...........................................................................................17
   25 Cal. Rptr. 3d 468 (Ct. App. 2005)

*Sinaltrainal v. Coca-Cola Co.* ............................................................................ 4
   578 F.3d 1252 (11th Cir. 2009)

*Strazzulla v. Riverside Banking Co.* ..................................................................17
   175 So. 3d 879 (Fla. 4th DCA 2015)

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.* ................................................5, 11
   551 U.S. 308 (2007)

*Tung v. Dycom Indus., Inc.* ...........................................................................15, 16
   454 F. Supp. 3d 1244 (S.D. Fla. 2020)

*Universal Express, Inc. v. U.S. S.E.C.* ...............................................................15
   117 Fed. App'x 52 (11th Cir. 2006)

*Wolf v. Frank* ...................................................................................................... 6
   477 F.2d 467 (5th Cir. 1973)

*Wolfe v. Am. Savings & Loan Assoc. of Fl.* .......................................................18
   539 So. 2d 606 (Fla. 3d DCA 1989)

*Zia v. Med. Staffing Network, Inc.* ..................................................................... 5
   336 F. Supp. 2d 1306 (S.D. Fla. 2004)

*Ziemba v. Cascade Int'l, Inc.* .............................................................................12
   256 F.3d 1194 (11th Cir. 2001)

## DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE AND MEMORANDUM OF LAW IN SUPPORT

Defendants, W. Kirk Wycoff, Howard Feinglass, Wayne K. Goldstein (collectively, the "Individual Defendants"), and U.S. Century Bank ("USCB" or "the Bank") (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 7(b), 9(b), and 12(b), and Southern District of Florida Local Rule 7.1, jointly move to dismiss Plaintiffs' First Amended Complaint (D.E. 7) with prejudice and in support state:

## SUMMARY OF ARGUMENT

This lawsuit presents the proverbial forcing of a round peg into a square hole. Plaintiffs should have sought a simple declaratory judgment action asking the State Court to decide if the Bank's Amended Articles of Incorporation prohibited the Bank from making an Exchange Offer. Plaintiffs, in fact, did just that in a derivative claim they filed over a year ago in the Miami Dade Circuit Court[1]. The Derivative Action was resolved without a judicial declaration on the Articles. Subsequently, this lawsuit was filed and once Plaintiffs learned they did not have diversity jurisdiction, they concocted a 10b-5 securities claim by amendment in a desperate attempt to claim federal court jurisdiction where none exists. The Exchange Offer and the initial public offering ("IPO") upon which this lawsuit is based are already complete and Plaintiffs never exchanged their preferred shares. In fact, Plaintiffs held their shares as of the date the Amended Complaint was filed and they continue to hold their preferred shares today.

---

[1] *Ramon E. Rasco and Armando J. Guerra, derivatively on behalf of Nominal Defendant U.S. Century Bank v. Aida Levitan, et al. [Board of Directors],* 11th Judicial Circuit Court, Case No. 2020-001947-CA-01 (the "Derivative Action").

1



Because Plaintiffs never bought or sold shares in the challenged transaction, they lack standing to assert a 10b-5 claim. They also have not alleged scienter, a misrepresentation of fact, or that they relied on or suffered any loss from an alleged misrepresentation of fact. Thus, Plaintiffs fail to state a 10b-5 claim, especially under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA). Plaintiffs also fail to demonstrate pendent jurisdiction or to state a claim for breach of fiduciary duty for multiple reasons and that claim should be dismissed with prejudice as well.

## INTRODUCTION

By way of background, on May 28, 2021, the Bank presented its preferred shareholders with an Exchange Offer that allowed the preferred shareholders to voluntarily exchange their Class C and Class D preferred stock for the Bank's Class A common stock. In an effort to raise capital to support its continued growth and to create a more simplified capital structure, the Bank planned to go public with an initial public offering and the preferred stock exchange rate would be based on the market price of the Class A shares sold to the public in that offering.

2

Plaintiffs are two of the Bank's original founders and legacy preferred shareholders and are the *only* preferred shareholders who brought suit challenging the Exchange Offer. Plaintiffs erroneously assert that the Bank's Amended Articles of Incorporation did not allow the Exchange Offer absent the common shareholders' vote amending the Articles. Plaintiffs bring this action individually attempting to transform their misguided interpretation of the Amended Articles of Incorporation into: (1) a violation of Section 10(b) of the Exchange Act and Regulation 10b-5, alleging that the exchange documents contained false and misleading statements in an attempt to deceive the Bank's shareholders and to artificially inflate the preferred share price; and (2) a state law breach of fiduciary duty claim alleging that Defendants failed to act in the common shareholders' best interests. Plaintiffs' Amended Complaint suffers from numerous separate and independent legal and jurisdictional defects, each of which is fatal to their claims.

As an initial matter, Plaintiffs do not—and cannot—satisfy even one of the six elements necessary to plead a 10b-5 claim. Plaintiffs never bought or sold shares in the challenged transaction, and thus do not meet the "purchase or sale" requirement and lack standing to assert this claim. They also fail to identify (much less with the particularity required by Rule 9(b) and the PSLRA) a material misrepresentation of fact. Moreover, Plaintiffs do not allege any facts from which this Court could infer that any Defendant acted with scienter. The Amended Complaint also falls woefully short of alleging that Plaintiffs reasonably relied on or suffered any loss from an alleged misrepresentation of fact. Accordingly, Plaintiffs' federal securities claim should be dismissed.

Plaintiffs' state law breach of fiduciary claim also fails on numerous grounds. Plaintiffs fail to plead any breach, as they (i) do not adequately allege Defendants actually participated in the action at the heart of their claim; (ii) fail to demonstrate that such action was not permitted by the Articles of Incorporation; and (iii) do not establish their standing to bring an individual claim for breach of fiduciary duties, even if the foregoing fatal defects were absent.

Plaintiffs also seek to preliminary and permanently enjoin Defendants from exchanging preferred stock to common stock and from participating in the Exchange Offer and future exchange offers. However, as the timeline above shows, Plaintiffs' injunction request is now moot because they did not seek a temporary restraining order and the

Exchange Offer and IPO are completed.  Accordingly, the Amended Complaint should be dismissed with prejudice.

## MEMORANDUM OF LAW

### I. Rules 12(b)(6) and 9(b) – Dismissal is Required Based on Plaintiffs' Failure to State a Claim Upon Which Relief May be Granted and Failure to Plead with Particularity

To survive a motion to dismiss for failure to state a cause of action under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept a plaintiff's well-pleaded facts as true but need not accept mere legal conclusions.  *Demeza v. Hartford Ins. Co. of the Midwest*, No. 8:11-cv-2522, 2012 WL 163818 (M.D. Fla. Jan. 19, 2012).  "Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'"  *Jacobs v. Tempur-Pedic Int'l, Inc.,* 626 F.3d 1327, 1333 (11th Cir. 2010) (*quoting Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn *quoting Twombly*, 550 U.S. at 570).  A complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'*" Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. App'x 912, 913 (11th Cir. 2014) (*quoting Iqbal*, 556 U.S. at 678).  "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief."  *Gavilan v. Balans, L.C.*, No. 14-22791-CIV, 2014 WL 6979625, at *1 (S.D. Fla. Dec. 9, 2014) (*citing Iqbal*, 556 U.S. at 678).

More specifically, the complaint "must be anchored in a bed of facts, not allowed to float freely on a sea of bombast.  That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith[] despite the highly deferential reading which [a court] accords a litigant's complaint under Rule 12(b)(6)."  *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 45 (1st Cir. 1991).  A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do.  *Twombly*, 550 U.S. at 554-55.

Likewise, to survive a motion to dismiss, a Rule 10b-5 claim must not only satisfy federal notice pleading requirements, it must also satisfy the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b) and the additional pleading

requirements imposed by the PSLRA.  *Luczak v. Nat'l Beverage Corp.,* 812 Fed. App'x 915, 919 (11th Cir. 2020).

## II.     Heightened Pleading Standards Under the PSLRA

An overlay to the Motion to Dismiss, the PSLRA requires a plaintiff to identify in his complaint "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state <u>with particularity</u> all facts on which that belief is formed."  *See* 15 U.S.C. § 78u-4(b)(1). Dismissal is appropriate if a complaint fails to specifically identify the allegedly fraudulent statements and explain *why* they were misleading.

The PSLRA also requires a plaintiff in alleging scienter, to do so "<u>with particular</u> facts giving rise to a <u>strong inference</u> that the defendant acted with the required state of mind." *See* 15 U.S.C. § 78u-4(b)(2)(A).  The "strong inference" standard "unequivocally raise[d] the bar for pleading scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). For Plaintiffs to allege a "strong inference" of scienter, the inference must be "powerful or cogent." *Id.* at 322.  The Supreme Court held that a complaint will survive dismissal, "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Id.* at 324.

In short, the PSLRA's heightened pleading requirements were designed to "screen out frivolous suits" and allow meritorious actions to move forward.  *Id.* at 324.  The purpose of the PSLRA was to allow securities defendants the ability to obtain early dismissal of frivolous actions. *Zia v. Med. Staffing Network, Inc.,* 336 F. Supp. 2d 1306, 1309 (S.D. Fla. 2004).  The PSLRA's heightened pleading standards bolster Defendants' Motion to Dismiss.

## III.    Grounds for Dismissal - Count I - Elements for 10(b) Cause of Action Not Met and Plaintiffs Lack Standing

Plaintiffs fail to sufficiently plead the factual bases for the six requisite elements of a 10b action: a material misrepresentation or omission of fact, in connection with the purchase or sale of a security, scienter, reliance, economic loss, and loss causation.  *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 461 (2013); *see also* Fed. R. Civ. P. 12(b)(6).

### A.     No Purchase or Sale

At the core of a 10b-5 claim lies the *Birnbaum* rule, i.e., the requirement that only purchasers and sellers of securities have standing to maintain an action under Rule 10b-5. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) (adopting *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952)). The *Birnbaum* rule bars "[a]ctual shareholders ... who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material" from bringing a Rule 10b-5 securities fraud claim. *Blue Chip Stamps,* 421 U.S. at 737; *see also McKinzie v. Davidson*, No. 05-61761-CIV, 2006 WL 8432332, at *3 (S.D. Fla. July 10, 2006). Under the *Birnbaum* rule, the following plaintiffs are excluded from bringing 10(b)-5 claims: "(1) people who did not purchase stock as a result of the defendants' conduct; (2) people who did not sell stock as a result of the defendants' conduct; and (3) 'shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment.'" *Licht v. Watson*, 567 Fed. App'x 689, 691 (11th Cir. 2014) (quoting *Blue Chip Stamps*, 421 U.S. at 737-38)). In other words, in order to have standing to bring a claim, a plaintiff must have purchased or sold a security as a result of the defendants' conduct; he may not simply allege that he suffered some "loss in the value of [his] investment." *Id.* at 691. Indeed, the alleged "dilution of shareholders' equity does not confer 'purchaser' or 'seller' status on a plaintiff seeking to overcome the standing hurdle in a direct 10b-5 suit." *Meyers v. Moody*, 693 F.2d 1196, 1216 n.16 (5th Cir. 1982). A "general claim of stock dilution" is insufficient to survive a motion to dismiss. *Kammona v. Onteco Corp.*, 587 Fed. App'x 575, 581-82 (11th Cir. 2014). *See also Wolf v. Frank*, 477 F.2d 467, 478 (5th Cir. 1973) (holding that dilution alone does not allow standing to seek individual damages under Rule 10b-5).

Here, Plaintiffs do not satisfy the *Birnbaum* rule because they do not allege that they bought or sold securities at all, let alone as a result of Defendants' alleged conduct. Indeed, the Amended Complaint fails to allege that *any* exchange occurred by any preferred shareholder as of the date of Plaintiffs' filing. Although there are allegations of a "sale of USCB," this is necessarily pled as a hypothetical future action ("could then arrange for a sale") and *not* the transaction or exchange event which forms the gravamen of the lawsuit. It is axiomatic that all elements to a cause of action must have occurred at the time of filing suit. *See, e.g., Hynd v. Ireland,* 582 So. 2d 772, 773 (Fla. 4th DCA 1991)("…all of the elements must

exist before an action may be maintained.").  Therefore, a possible future sale cannot form the requisite event for the 10(b)-5 action.

Furthermore, Plaintiffs' attached exhibits make it crystal clear that Plaintiffs did not purchase or sell a security and that the time for Plaintiffs to exchange their preferred shares has now closed.  Specifically, Exhibit 5 to the Amended Complaint (The Letter of Transmittal with Respect to the Bank's Offer to Exchange) sets forth specific procedures for preferred shareholders to participate in the Exchange Offer:

> 2.     Procedures for Submitting Shares of Preferred Stock.
>
> Holders of Preferred Stock in Certificated Form.  If your interest is in certificated form, you must do each of the following to validly submit for exchange: (i) complete and manually sign the letter of transmittal accompanying the Offer to Exchange, or a facsimile of the letter of transmittal, and deliver same to the Bank; (ii) have the signature on the letter of transmittal, or a facsimile of the letter of transmittal guaranteed, if required, and deliver same to the Bank; (iii) deliver the certificates for your shares of Preferred Stock to the Bank; (iv) if required, furnish appropriate endorsements and transfer documents; and (v) pay all transfer or similar taxes imposed for any reason other than the exchange of shares of Preferred Stock pursuant to the Exchange Offers.

(D.E. 7, Ex. 5 at 2.)[2]

The Exchange Offer itself has similar language:

> If you want to submit your shares of Preferred Stock for exchange, you must complete and duly execute the Letter of Transmittal that accompanies this Offer to Exchange in accordance with the instructions in the Letter of Transmittal and mail or deliver your original Preferred Stock certificates representing all shares of Class C Preferred Stock and Class D Preferred Stock that you hold, the completed Letter of Transmittal and all other required documents to the Bank at the following address. To validly submit your shares of Preferred Stock in the Exchange Offers, the Bank must receive (i) the Letter of Transmittal, your certificates for shares for Preferred Stock and all other required documents on or prior to the Expiration Date, or (ii) an electronic copy of the Letter of Transmittal by email on or prior to the Expiration Date, provided that the original Letter of Transmittal, your certificates for shares for Preferred Stock and all other required documents will be received by the Bank no later than the business day immediately following the Expiration Date.

(D.E. 7, Ex. 6 at ii.)

Thus, notwithstanding Plaintiffs' conclusory attempt to label the *Exchange Offer* a "purchase or sale" pursuant to Section 10(b) of the Exchange Act (D.E. 7, ¶ 90), neither the facts nor the law supports this conclusory assertion.  Plaintiffs' wordplay misses the point in

---

[2] This Court may consider the documents attached to Plaintiffs' Amended Complaint that lay out the terms of the transaction.  *See Basson v. Mortgage Electronic Registration Sys., Inc.,* 741 Fed. App'x 770, 771 (11th Cir. 2018)(court can always consider exhibits attached to a complaint on a 12(b)(6) motion because exhibits are part of the pleadings).

any event, as the *Birnbaum* rule requires that a <u>plaintiff</u> participate in such purchase or sale. Because Plaintiffs' own allegations reflect that they remain holders of the preferred stock, a purchase or sale of a security by them simply did not occur. Furthermore, a "sale" would arguably only occur upon a preferred shareholder's acceptance of the exchange and the Bank's issuance of the Class A common stock for the shares of preferred stock:

> **Subject to and effective upon acceptance for exchange of, and issuance of shares of Class A common stock for, the shares of Preferred Stock submitted herewith, the undersigned hereby: (i) irrevocably sells, transfers, conveys and assigns to or upon the order of the Bank, all right, title and interest in and to the shares of Preferred Stock submitted hereby;** (ii) waives any and all other rights with respect to such shares of Preferred Stock (including with respect to any existing or past defaults and their consequences in respect of such shares of Preferred Stock); and (iii) releases and discharges the Bank from any and all claims that the undersigned may have now, or may have in the future, arising out of, or related to, such shares of Preferred Stock, including any claims that the undersigned is entitled to receive additional payments with respect to such shares of Preferred Stock or to participate in any redemption of such shares of Preferred Stock.

(D.E. 7, Ex. 5 at 5.) The Amended Complaint does not—and cannot—allege that either of these events occurred with regard to Plaintiffs' preferred shares and, thus, Plaintiffs lack standing to bring Count I. *See Licht*, 567 Fed. App'x at 691 (11th Cir. 2014).

### B.   No Factual Misrepresentations

At the outset, the Individual Defendants can only be liable under Rule 10b-5 if they made or disseminated the alleged misstatements. *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) ("The Supreme Court has held that a defendant must have 'made' the statement to be liable for a violation of Rule 10b-5(b)."); *see also Geoffrey A. Orley Revocable Tr. U/A/D 1/26/2000 v. Genovese*, No. 18-CIV-8460(ER), 2020 WL 611506, at *7 (S.D.N.Y. Feb. 7, 2020) (granting dismissal because the defendant was never alleged to have disseminated or even approved of the alleged misstatements). Here, Plaintiffs state, in a conclusory fashion, that the Individual Defendants did so, but they allege no facts in support and the Amended Complaint's exhibits refute any such allegation. Indeed, as shown further below, the Amended Complaint's exhibits show that a disinterested special committee of members of the Bank's Board (i.e., not the Individual Defendants) approved the transaction, and the alleged misstatements were sent by other Bank personnel. Thus, there are not facts alleged to support that the Individual Defendants had anything to do with making or disseminating an alleged misstatement.

Moreover, although Plaintiffs allege that Defendants misrepresented facts in the exchange documents, the only "misrepresentation" identified in the pleadings relates to the

interpretation of the Amended Articles of Incorporation.  Specifically, Plaintiffs allege that Defendants misrepresented "that the Board could authorize the Exchange Transaction and that USCB can exchange Class C and D preferred stock for Class A common stock."  (D.E. 7, ¶ 112; *also see* ¶ 98.)  Plaintiffs overlook, however, that the correct interpretation of the Articles of Incorporation is at best a matter of legal judgment on which reasonable minds can differ—a legal conclusion or an opinion, in other words—and not a fact.[3]

Defendants' supposed statements expressing their opinion are statements of belief subject to the Supreme Court of the United States' special standard for pleading the falsity of opinion statements.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188 (2015) (opinion statements include statements about "legal compliance").  In addition, in order to plead the falsity of those statements, Plaintiffs must adequately allege (i) Defendants did not sincerely hold the opinion that the Articles of Incorporation authorized the Exchange Transaction; (ii) Defendants' opinion statements contained an inaccurate embedded fact; or (iii) Defendants omitted some material fact that rendered their statements misleading.  *Id.* at 184-86.  Plaintiffs do not even acknowledge that the supposed misstatements were opinion statements subject to *Omnicare*'s three-pronged framework, let alone meet *Omnicare*'s requirements for pleading falsity.

In Plaintiffs' Amended Complaint, there are no allegations that any legal conclusion or opinion falsely described the speaker's own state of mind when the speaker believed otherwise.  Likewise, Plaintiffs failed to plead that the legal conclusions contain embedded statements of fact that were untrue.  Neither circumstance to convert legal conclusion or opinion to actionable liability was pled, let alone pled with the requisite particularity giving rise to a strong inference that Defendants acted with the required state of mind (i.e., with an

---

[3] Significant to the disposition of this lawsuit, Florida law recognizes that Articles of Incorporation and corporate Bylaws are construed applying principles of contract interpretation.  *Berkowitz v. Delaire Country Club, Inc.,* 126 So. 3d 1215, 1218 (Fla. 4th DCA 2012).  As such, contract interpretation is a question of law – not a statement of fact – to be decided by the court by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent."  *Golden v. Univ. of Miami,* 484 F. Supp. 3d 1255, 1262 (S.D. Fla. 2020).

"intent to defraud or severe recklessness"). *See Carvelli v. Ocwen Fin. Corp.,* 934 F.3d 1307, 1323 (11th Cir. 2019).

Moreover, as the Amended Complaint's exhibits show, Plaintiffs' legal claim that the Articles of Incorporation prohibited the Exchange Transaction fails as a matter of law. Specifically, Article III, Subsection B.1.(c) provides:

> B.   Preferred Stock
>
>   1.   General.
>
>   Subject to applicable law, to these Articles of Incorporation and to the Corporation's Bylaws, the Board of Directors is authorized, at any time or from time to time, to issue Preferred Stock and: (i) to provide for the issuance of shares of Preferred Stock in one or more classes or series, and any restrictions on the issuance or reissuance of any additional Preferred Stock; (ii) to determine the designation for any such classes or series by number, letter or title that shall distinguish such classes or series from any other classes or series, respectively, of Preferred Stock; (iii) to establish from time to time the number of shares to be included in any such class or series, including a determination that such class or series shall consist of a single share, or that the number of shares thereof shall be decreased (but not below the number of shares thereof then outstanding); and (iv) to determine with respect to the shares of any class or series of Preferred Stock the terms, powers, preferences, qualifications, limitations, restrictions and relative, participating, optional or other special rights of the shares of such class or series of Preferred Stock, including, but not limited to:
>
>   ...
>
>   (c)   whether, and, if so, upon what terms and conditions, such shares shall be convertible into, or exchangeable for, other securities or property;

(D.E. 7, Ex. A at 11.)

Plaintiffs ignore the plain words above (specifically "convertible" and "exchangeable") to argue that the Board was only authorized to issue new shares of preferred stock, but not to convert or exchange existing shares of preferred stock into shares of common stock.  (D.E. 7, ¶ 78.)  First, the Articles are clear in the use of the words "at any time or from time to time" that the Board is authorized to issue preferred stock at any time.  As a corollary, the Articles clearly yield the authority to the Board "to determine with respect to the shares … of Preferred Stock the terms, powers, preferences, qualifications, limitations, restrictions…" including but not limited to "whether, and … upon what terms and conditions, such shares [of Preferred Stock] shall be convertible into, or exchangeable for, other securities."  (D.E. 7, Ex. A at 11.)  Thus, Plaintiffs' interpretation prohibiting the Exchange Offer and conversion of preferred

stock to common stock is contradicted by the unambiguous language of the Articles, which this Court must apply as written.

In addition, Plaintiffs imply that Article III, Subsections B.2.(e)(v) and (xi) somehow prevent the Board from authorizing the Exchange Transaction.   (D.E. 7, ¶¶ 79, 80.) Subsection B.2.(e)(v), however, logically provides that **"holders"** of preferred stock have no automatic right to exchange or convert such shares; it does not prohibit the **<u>Board's</u>** authority, as set forth in Article III, Subsection B.1., to authorize such a transaction:

> (v)    <u>Conversion</u>. <mark>Holders</mark> of Designated Preferred Stock shares shall have no right to exchange or convert such shares into any other securities of the Corporation.

(D.E. 7, Ex. A at 29.)

Similarly, Subsection B.2.(e)(ix) provides only that the preferred shares do not automatically carry any special rights or privileges except as provided in the Articles:

> (xi)    <u>Other Rights</u>. The shares of Designated Preferred Stock shall not have any rights, preferences, privileges or voting powers or relative, participating, optional or other special rights, or qualifications. limitations or restrictions thereof, other than as set forth herein or as provided by applicable law.

(D.E. 7, Ex. A at 33.)  Again, this provision says nothing about limiting the Board's power to authorize the Exchange Transaction.

Even though this is not a declaratory judgment action, in essence this Court is being asked to decide what the Articles mean, which is a question of law, not a fact question.  Thus, Plaintiffs have failed to allege any misrepresentation of <u>fact</u>.

**C.**    **<u>No Scienter</u>**

Plaintiffs also fail to sufficiently plead the essential element of scienter.  Scienter refers to a mental state embracing an intent to deceive, manipulate, or defraud.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  Plaintiffs have not established with sufficient facts that each Defendant[4] either:

---

[4] "We hold that scienter must be found with respect to each defendant and with respect to each alleged violation of the statute."  *Phillips v. Scientific–Atlanta, Inc.,* 374 F.3d 1015, 1017–18 (11th Cir. 2004).

- Consciously misbehaved, in either direct or circumstantial evidence probative of securities fraud (including where the plaintiff fails to allege motive and opportunity to defraud); or

- Showed the extreme departure from the standards of ordinary care necessary to establish recklessness.

In the Eleventh Circuit, the scienter needed to maintain a Rule 10b-5 action is <u>severe recklessness</u>. *McKinzie v. Davidson*, No. 05-61761-CIV, 2006 WL 8432332, at *4 (S.D. Fla. July 10, 2006), *citing Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001). "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

While Plaintiffs claim that Defendants made false and misleading statements, engaged in a scheme to deceive the shareholders, and artificially inflated the price of the preferred stock, the Amended Complaint and attached exhibits explain the decision behind the *Exchange Transaction,* which was not a nefarious one whatsoever.  Instead, the Bank needed to raise capital to support its continued growth and viability and a special committee of disinterested directors, based on the belief that the Articles authorized the Exchange Transaction, undertook to approve the Exchange Transaction because it would benefit the Bank.  The Articles did not authorize preferred shareholders to demand an exchange or even a redemption because that could jeopardize the Bank if shareholders controlled the manner in which individuals' shares could be exchanged or redeemed for cash.  Instead, the Articles presciently set forth a proper authorization in which the Bank - through its Board of Directors - could convert or exchange such shares of preferred stock.  This is precisely what is set forth in the Articles, precisely what the Bank did, and Plaintiffs fail to sufficiently allege scienter as required.  Plaintiffs cite no red flags, confidential witnesses or internal documents in support of their version of events.

Moreover, it was not the Individual Defendants who approved the transaction. Plaintiffs allege, without support, that the three Individual Defendants, as indirect owners of preferred stock, "devised and approved the Exchange Transaction" to benefit the equity funds

over which they have control.  For instance, Plaintiffs made the following allegations in the Amended Complaint:

> 5.   Wycoff, Feinglass, and Goldstein acted in concert as directors of USCB to devise and approve the Scheme in order to increase the percentages of USCB voting common stock held by the private equity funds each represents on the USCB Board and to gain voting control over USCB in conjunction with four other private equity funds currently holding USCB Class D preferred stock.

> 7.   On or about May 28, 2021, the Individual Defendants approved, or caused to be approved, USCB's decision to offer Class C and D preferred shareholders the opportunity to converge Class C and D preferred shares into voting common shares …

> 61.   Motivated purely by self-interest and with the goal to benefit the Private Equity Funds at the expense of the existing holders of common stock, the Defendants approved the Exchange Transaction.

> 85.   The Individual Defendants, all directors of USCB, approved or caused to be approved, the Exchange Transaction even though the Amended Articles do not authorize directors to approve a transaction converting or exchanging existing preferred stock to common stock.

(D.E. 7, ¶¶ 5, 7, 61, 85.)

But Plaintiffs' allegations have no factual support.  In reality, a **special committee** of **disinterested directors** (as explained in Exhibit 6 to the Amended Complaint) approved the Exchange Offer and authorized the Board, comprised of seven directors, to carry through with it.

> Our Board has authorized us to make the Exchange Offers after consideration and approval by a special committee of our Board comprised of disinterested directors. However, neither we nor any of the members of our Board make any recommendation to you as to whether to exchange or refrain from exchanging your Preferred Stock. You must make your own decision as to whether to submit your Preferred Stock for exchange.

(D.E. 7, Ex. 6 at 15.)  The three Individual Defendants were **not** members of the special committee.  Plaintiffs did not, and cannot, allege that the Individual Defendants were on or

had any involvement with the special committee.  Accordingly, the Amended Complaint simply fails to meet the requisite pleading standard of severe recklessness.

      **D.**    <u>**No Reliance**</u>

      In addition to there being no requisite allegations of a material misrepresentation or omission of fact in connection with the purchase or sale of a security, and no scienter, Plaintiffs' Amended Complaint glaringly lacks any allegation of reliance.  Significantly, Plaintiffs previously raised these same allegations at the state court level in January 2020 in their Derivative Action relating to a different exchange transaction.  As a result, Plaintiffs cannot now say they "relied" to their detriment on the Bank's May 2021 statement that the Articles of Incorporation permitted the Exchange Transaction.  In fact, Plaintiffs fail to even allege in the Amended Complaint that they actually relied to their detriment on the Bank's May 2021 statement.

      Courts have held that reliance is an essential element of a Rule 10b–5 action because it "establishes the causal link between the defendant's activities and the plaintiff's injuries and prevents federal securities law from affording unlimited liability." *In re Sahlen & Assocs., Inc. Sec. Litig.,* 773 F. Supp. 342, 352 (S.D. Fla. 1991), *citing Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11ᵗʰ Cir. 1989) (en banc), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990). The most common and direct way for a plaintiff to demonstrate reliance "is by showing that he was aware of a company's statement and engaged in a relevant transaction ... based on that specific misrepresentation." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013).

      In order to recover in this Circuit, Plaintiffs must show that they "reasonably" relied upon a misrepresentation or omission made by Defendants.  *In re Sahlen & Assocs., Inc. Sec. Litig.,* 773 F. Supp. at 352 (internal citations omitted).  Reasonable reliance is determined by asking, first, whether the individual actually relied and second, by analyzing whether he was duly diligent in having done so.  *Id.* (internal citations omitted).  Therefore, Plaintiffs' reliance must be actual as well as "justifiable," meaning that "with the exercise of reasonable diligence one still could not have discovered the truth behind the fraudulent omission or misrepresentation.  *Id.*

      In their January 27, 2020, Complaint in the Derivative Action, Plaintiffs alleged:

> 49.    The Amended and Restated Articles also created certain redemption rights in USCB for the Class C and Class D preferred stock.  The Class C and Class D preferred stockholders, however, had no right to require redemption or repurchase of the Class C or Class D shares.
>
> 50.    The Amended and Restated Articles expressly state that Class C shareholders had no right to convert Class C shares into any other securities of the Bank.
>
> 51.    The Amended and Restated Articles also expressly state that the Class C and Class D shareholders "shall not have any rights, preferences, privileges or voting powers or relative, participating, option or other special rights, or qualifications, limitations or restrictions thereof, other than as set forth herein or in the Articles of Incorporation or as provided by applicable law."
>
> 52.    The Amended and Restated Articles did not authorize the directors to convert Class C or Class D preferred stock to common stock.
>
> 53.    The Amended and Restated Articles, in Article III, Section B, authorize the directors to create new classes of stock and to create certain rights, including conversions rights, for the new classes, but do not authorize the directors to engage in transactions to convert the existing classes of preferred stock into voting or non-voting common stock.

**Exhibit A**.  *Also see* Ex. A, ¶¶ 90-92.[5]  Plaintiffs' 2020 allegations make it indisputable that they did not and have never relied on the Bank's position on what the Bank believes the Articles of Incorporation permit as to exchange transactions.  For this additional reason, the Amended Complaint fails to state a claim.

### E.    No Economic Loss and No Loss Causation

The final two elements for Plaintiffs' 10b-5 claim are not even pled by Plaintiffs in any cognizant fashion, let alone with particularity.

For economic loss, Plaintiffs cursorily allege "economic losses through the dilution of the value of their common stock" along with equally unspecified "damages resulting from the Exchange Offer."  (D.E. 7, ¶ 115, Wherefore Clause.)  These allegations fail to identify any economic loss "in connection with the purchase or sale of a security."  *See Tung v. Dycom Indus., Inc.*, 454 F. Supp. 3d 1244, 1258 (S.D. Fla. 2020).

---

[5] A district court may take judicial notice of certain facts, including public records such as a prior complaint, without converting a motion to dismiss into a motion for summary judgment.  *See Universal Express, Inc. v. U.S. S.E.C.*, 117 Fed. App'x 52, 53 (11th Cir. 2006).

15

For loss causation in a section 10(b) claim, a plaintiff must offer "proof of a causal connection between the misrepresentation and the investment's subsequent decline in value. *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013). "[L]oss causation polices the realm of § 10(b) claims, guarding against their use as an *in terrorem* device to force companies to settle claims simply to avoid the cost and burden of litigation." *Id.* at 1196. Thus, allowing a plaintiff to forego the vital loss causation element "would bring about the very sort of harm the securities statutes seek to avoid" and "transform a private securities action into a partial downside insurance policy." *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347-48 (2005). Plaintiffs must show that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered, *i.e.*, that the misstatement[s] or omission[s] concealed something from the market that, when disclosed, negatively affected the value of the security." *Tung v. Dycom Indus., Inc.*, 454 F. Supp. 3d 1244, 1258 (S.D. Fla. 2020).

Instead of meeting their burden outlined above, Plaintiffs conclusively allege damage and entirely fail to allege the requisite causal connection between any alleged material misrepresentation and the loss incurred.

## IV.   Grounds for Dismissal - Count II – Plaintiffs Lack Standing to Sue Directly and Elements for Breach of Fiduciary Duty Not Met

Plaintiffs also fail to state a claim for breach of fiduciary duty against any of the Defendants.

### A.   Plaintiffs Lack Standing to State a Breach of Fiduciary Duty Claim

First, Plaintiffs' breach of fiduciary duty claim fails because Plaintiffs lack standing to assert it directly.  It is a well-settled axiom that an individual shareholder cannot sue in the shareholder's name for injuries to a corporation unless there is a special duty between the wrongdoer and the shareholder.  *Braun v. Buyers Choice Mortgage Corp.*, 851 So. 2d 199, 203 (Fla. 4th DCA 2003); *see also, e.g., Falic v. Legg Mason Wood Walker, Inc.,* 347 F. Supp. 2d 1260 (S.D. Fla. 2004)(a shareholder can bring a direct action only if he "(1) is not similarly situated to other shareholders; (2) suffers a distinct injury (i.e., special damages) from the other shareholders; and (3) does not have the same opportunity to be made whole by a corporate recovery"); *Alario v. Miller*, 354 So. 2d 925, 926 (Fla. 2d DCA 1978) ("An action brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation or to

16

the whole body of its stock or property and not injury to the plaintiff's individual interest as a stockholder.").

Further, a shareholder cannot bring a direct action for damages against management on a theory that management's wrongdoing decreased the value of his stock.  *Schuster v. Gardner,* 25 Cal. Rptr. 3d 468, 473 (Ct. App. 2005); *see also Angelino v. Santa Barbara Enters., LLC,* 2 So. 3d 1100 (Fla. 3d DCA 2009)(recognizing that shareholders have no standing to bring direct actions for injuries allegedly suffered by the corporation, when shareholders' only claim was that the value of their interest was diminished).

The Florida Legislature recently addressed when a shareholder can sue directly with the passage of section 607.0750, Florida Statutes.   Under section 607.0750, in order to maintain a direct action, a shareholder must show either:

> (a) An actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the corporation; or
>
> (b) An actual or threatened injury resulting from a violation of a separate statutory or contractual duty owed by the alleged wrongdoer to the shareholder, even if the injury is in whole or in part the same as the injury suffered or threatened to be suffered by the corporation.

§ 607.0750(2), Fla. Stat.

At least one court has recognized that this recent change "did nothing but codify *Dinuro.*"  *Arbitrage Fund v. Petty*, 307 So. 3d 119 (Fla. 3d DCA 2020).  In *Dinuro*, the court developed the foregoing two-prong test for a shareholder's standing to bring a direct suit, and held that a shareholder cannot bring a direct action for damages on the theory that the defendants' "alleged wrongdoing decreased the value of his or her stock." *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 736 (Fla. 3d DCA 2014).  The court also held that asserting a special injury involves a wrong that is separate and distinct from that suffered by other shareholders. *Id.*; *see also Strazzulla v. Riverside Banking Co.*, 175 So. 3d 879, 885-86 (Fla. 4th DCA 2015) (finding a special injury where only the plaintiffs, as shareholders, privately received representations that other shareholders did not receive).

Here, Plaintiffs have sued in their individual capacity and have failed to plead the violation of a separate statutory or contractual duty owed to the individual plaintiffs or that they suffered any injury separate and distinct from the injury allegedly suffered by other

17

shareholders who were equally offered the Exchange Transaction. *See In re Sunrise Sec. Litig.,* 916 F.2d 874 (3d Cir. 1990)(applying Florida law, the court found that plaintiffs did not have standing to bring a direct action without evidence that an individual suffered a separate and distinct injury from other shareholders); *Wolfe v. Am. Savings & Loan Assoc. of Fl.,* 539 So. 2d 606, 607-08 (Fla. 3d DCA 1989); § 607.0750(2), Fla. Stat. (2021). To the contrary, Plaintiffs expressly allege that "[a]s a result of Defendants' actions . . . Plaintiffs have suffered economic losses <u>through the dilution of the value of their common stock</u>." (D.E. 7, ¶ 115.) Such an allegation is precisely the type of harm found to be derivative in *Dinuro*. Moreover, the alleged dilution, if it occurred, would be common to all of the common stock shareholders and not unique to Plaintiffs. Again, if Plaintiffs have any claim at all, it is a derivative claim in State Court – just like they filed before.

**B.** **<u>There Are No Well-Pleaded Factual Allegations to Support a Claim that Defendants Breached Any Fiduciary Duties</u>**

Even if Plaintiffs possessed standing, their claim for breach of fiduciary duties should nonetheless be dismissed because of numerous other failures of pleading. First, insofar as Plaintiffs purport to bring a claim against the Bank, that claim must be dismissed because the Bank owes no fiduciary duties to shareholders. Rather, Florida's Business Corporation Act imposes fiduciary duties on the directors and officers of corporations, not on the corporations themselves. *See* § 607.0830, Fla. Stat. (directors) and § 607.0841, Fla. Stat. (officers). Those statutes are consistent with the recognition of courts around the country that fiduciary duties are owed to corporations, not by corporations. *See, e.g., Arnold v. Soc'y for Sav. Bancorp*, 678 A.2d 533, 539 (Del. 1996) (rejecting claim of direct liability against corporation for violating fiduciary duty of disclosure, noting that fiduciary duty claims are owed to corporations by directors and officers, and quoting Delaware Supreme Court holding that where "[t]he only defendant is the corporate entity, . . . there are no fiduciary duty claims"). Next, Plaintiffs' breach of fiduciary duty claim must be dismissed because Plaintiffs' only allegations are conclusory contentions that the Individual Defendants, as interested directors, improperly approved the Exchange Transaction, which was supposedly ultra vires to the Articles of Incorporation. But as shown above, these allegations are contradicted by the Amended Complaint's own exhibits that are incorporated by reference therein, which show that (i) the transaction was approved by a special committee made up of disinterested directors, and not

the Individual Defendants; and (ii) the Articles of Incorporation specifically allow the Exchange Transaction.

## V.   Pendent Jurisdiction

28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."   Generally, the Court should only exercise supplemental jurisdiction over the pendent, common-law claims if Plaintiffs can proceed on the federal-question claims. *Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.,* No. 12-61018-CIV, 2013 WL 12080186, at \*5 (S.D. Fla. Sept. 12, 2013), *subsequently aff'd*, 572 Fed. App'x 713 (11th Cir. 2014), *citing Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (holding that district court did not abuse its discretion in declining to exercise supplemental jurisdiction over pendent state claims when original jurisdiction claims were dismissed).

Because Defendants established that this Court lacks jurisdiction based on Plaintiffs' failure to plead a 10b-5 action, dismissal of the entire case is within this Court's discretion and warranted.[6] Therefore, while Defendants respectfully submit that the Court should dismiss the fiduciary duty claim with prejudice, if it declines to do so, it should decline to exercise pendent jurisdiction over such claim given the absence of a federal question here.

## CONCLUSION

Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint with prejudice and award such other and further relief as the Court deems just and proper, including sanctions under the PSLRA for attorneys' fees.

Dated: August 18, 2021.

---

[6] Defendants incorporate Mr. Wycoff's Motion to Dismiss Plaintiffs' original Complaint (D.E. 6), which shows there is no diversity among the parties.  Indeed, in response to that Motion, Plaintiffs modified their allegation in the Amended Complaint to aver that Mr. Wycoff is a resident of Florida – not Pennsylvania. (*See* D.E. 7, ¶ 15.)  Thus, absent a 10b-5 claim, this Court lacks any subject matter jurisdiction and should decline to exercise pendent jurisdiction over Plaintiffs' state law claims.

LINK & ROCKENBACH, PA
1555 Palm Beach Lakes Blvd., Suite 930
West Palm Beach, Florida 33401
(561) 847-4408; (561) 855-2891 [fax]

COZEN O'CONNOR
Southeast Financial Center, Suite 3000
200 South Biscayne Blvd.
Miami, FL  33131-2352
(305) 704-5940; (305) 704-5955 [fax]

By: _/s/  Scott J. Link_____
    Scott J. Link (FBN 602991)
    Kara Rockenbach Link (FBN 0044903)
    Scott@linkrocklaw.com
    Kara@linkrocklaw.com
    Tina@linkrocklaw.com
    Troy@linkrocklaw.com
    *Counsel for Defendant U.S. Century Bank*

By:_/s/  Jason R. Domark, w/permission_____
    Jason R. Domark (FBN 0880191)
    Charles C. Kline (FBN 137737)
    Reid Kline (FBN 0908991)
    Ashley Gomez-Rodon (FBN 1010237)
    jdomark@cozen.com
    ckline@cozen.com
    rkline@cozen.com
    agomez-rodon@cozen.com
    *Counsel for Defendants W. Kirk Wycoff,*
    *Howard Feinglass and Wayne K. Goldstein*

## CERTIFICATE OF SERVICE

I CERTIFY that on August 18, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will serve the document on counsel of record through the CM/ECF system.

LINK & ROCKENBACH, PA
1555 Palm Beach Lakes Boulevard, Suite 930
West Palm Beach, Florida 33401
(561) 847-4408; (561) 855-2891 [fax]

By: _/s/  Scott J. Link_____
    Scott J. Link (FBN 602991)
    Kara Rockenbach Link (FBN 0044903)
    Primary:  Scott@linkrocklaw.com
    Primary:  Kara@linkrocklaw.com
    Secondary:  Tina@linkrocklaw.com
    Secondary:  Troy@linkrocklaw.com
    *Counsel for Defendant U.S. Century Bank*

## SERVICE LIST

George C. Mahfood
Ryan K. Todd
Nelson Mullins Broad and Cassel
One Biscayne Tower, 21st Floor
2 South Biscayne Blvd.
Miami, FL  33131
George.mahfood@nelsonmullins.com
Ryan.todd@nelsonmullins.com
*Counsel for Plaintiffs*

Jason R. Domark
Charles C. Kline
Reid Kline
Ashley Gomez-Rodon
Cozen O'Connor
Southeast Financial Center, Suite 3000
200 South Biscayne Blvd.
Miami, FL  33131-2352
jdomark@cozen.com
ckline@cozen.com
rkline@cozen.com
agomez-rodon@cozen.com
*Counsel for Defendants W. Kirk Wycoff,*
*Howard Feinglass and Wayne K. Goldstein*